BROWN, Respondent, vs. CONNERS, Appellant.

*April 5—April 23, 1912.*

*Master and servant: Injury to servant unloading vessel: Unsafe working place: Changes incident to work: Assumption of risk: Warning of danger.*

1. The work of unloading freight from a vessel being accompanied by risks and hazards springing from the constantly changing and shifting conditions which arise as the work proceeds, and it being impossible for the employer to keep the changing working place of the employees engaged in such work free from the hazards and dangers incident thereto and created by themselves, such employees are presumed to know and assume them as risks of the employment.

2. So *held*, where an employee was injured by the fall of a pile of sheet steel which he with others was engaged in unloading from the deck of a vessel, the situation and arrangement of

the pile, its relation to the working place, and the danger of its falling over being obvious and as readily comprehended by the employee as by the foreman in charge of the work.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

This is an action for damages for personal injuries suffered by the plaintiff while employed by the defendant as a laborer in unloading freight from the package freighter Clarion in the Menomonee river canal in Milwaukee harbor. The falling over of a pile of sheet steel piled on the deck of the boat caused plaintiff's injuries. The defendant is engaged as a contractor in the business of loading and unloading cargoes at various ports on the Great Lakes from boats plying between these ports. Previous to working for the defendant the plaintiff had been a stoker and oiler on coal and ore boats. At the time he was injured, December 2, 1909, he had been working for the defendant for about three months. He had never handled sheet steel before the time of the accident.

Two piles of sheet steel, between four and six feet high, consisting of sheets twelve or thirteen inches wide and eight or nine feet long, had been placed about the center of the deck, parallel with the length of the boat. One end of the piles was right at the gangway, along which the freight was being carried from the boat. Several carloads of boxes of freight surrounded these piles of sheet steel, and it was necessary that some of this be removed before the sheet steel could be reached. The packages along the sides of the piles of steel were removed so as to clear the piles of sheet steel and to make a place for the workmen to handle the sheet steel. One of the piles of sheet steel had been almost removed from the boat when the foreman for the defendant ordered the plaintiff to go to the end of the other pile of sheet steel farthest from the gangway to assist in removing the pile. The plaintiff, standing at the side and near one end of the piles of sheet steel, with the assistance of another worker at the other end, would re-

move one, two, or three sheets from the pile and place them upon the shoulder of a third workman. This third workman would carry the sheets from the boat. Two or three such loads had been taken from the pile at which the plaintiff worked when the pile fell over toward the plaintiff. He testified that he could not escape because of the boxes piled around the place in which he was working. The pile fell upon him, injuring one of his legs so badly that it was necessary to remove it. The accident occurred between 6 and 7 o'clock in the evening. The foreman urged the men, and particularly the plaintiff, to hurry the unloading so that the boat might be ready to depart. There was a light in the gangway, which lighted the end of the pile away from the plaintiff. There was a light five or six feet back of the place where plaintiff worked, but it is not clear that the light from it fell upon the pile of steel. The foreman for the defendant stood in the gangway near that end of the pile of sheet steel away from the plaintiff.

There was evidence that, just before the pile fell over, a tug passed in the canal and that the boat swayed from the movement of the water caused by the passing tug, that the gang plank required readjustment after the tug had passed, that the removal of the cargo from the hold of the boat before removal of the freight from the deck would tend to make a boat unstable and liable to rock easily, and that the cargo had been so taken from the hold.

The jury found that the defendant did not furnish the plaintiff a reasonably safe place in which to work; that the foreman for the defendant did not exercise that degree of caution in the work of unloading the boat for the protection of the plaintiff which ordinarily careful persons exercise under the same or similar circumstances; that the defendant negligently failed to warn the plaintiff of any danger which the defendant in the exercise of ordinary care ought to have known; that each of these three negligences was the proximate

cause of the plaintiff's injuries; that the plaintiff ought not in the exercise of ordinary care to have known of the danger; that the place in which the plaintiff was working when injured did not become unsafe from causes incident to and commonly occurring in the employment in which plaintiff was engaged; and that the plaintiff was not guilty of contributory negligence. The damages were fixed at $10,000.

The court gave the plaintiff the option to remit $2,000 from the damages awarded or to submit to a new trial. Plaintiff elected to take judgment for $8,000 and costs, and judgment was rendered accordingly. This is an appeal from the judgment so rendered.

For the appellant there were briefs by *Doe & Ballhorn*, and oral argument by *J. B. Doe*.

For the respondent there was a brief by *Oscar W. Kreutzer*, attorney, and *James D. Shaw*, of counsel, and oral argument by *Mr. Kreutzer*.

SIEBECKER, J. The appellant contends the court erred in submitting the case to the jury for decision, because the evidence fails to show that the defendant and his servants were guilty of any want of ordinary care which caused plaintiff's injury. The trial court was of the view that the evidence tended to show that defendant's representative, in charge of the business in which plaintiff was engaged as a laborer, failed to exercise ordinary care, and the court therefore submitted to the jury the inquiries whether or not the defendant was guilty of negligence in failing to furnish plaintiff a reasonably safe place in which to work, and whether or not he was guilty of negligence in failing to warn the plaintiff of dangers incident to plaintiff's work and not open and obvious to a person of ordinary intelligence and knowledge while exercising ordinary care in the performance of such service. It is manifest from the facts established by the evidence that from its nature the work of unloading freight from the boat was accompanied by risks

and hazards springing from the constantly changing and shifting conditions that arose as the work proceeded. Under such circumstances it is impossible for the master to follow up the progress of the work and keep the changing working place free from the hazards and dangers incident to the progress of the work, and he is therefore not subjected in law to liability for the injuries a servant may sustain on account thereof. The danger of injury to the servant under such conditions springs from the continual changes produced by the work and therefore naturally inherent in and incident to the employment, and the servant is presumed to know and assume them as risks of the employment. See note to *Citrone v. O'Rourke E. C. Co.* (44 Colo. 472, 98 Pac. 634) 19 L. R. A. N. s. 340. It is obvious from the situation presented in the instant case that the danger to plaintiff's safety from the falling steel sheets was a transitory peril, which was occasioned by and arose from the changing conditions incident to the execution of the work in which plaintiff was engaged, and hence it is within the exception to the rule by which the master is required to furnish the servant a reasonably safe working place. The facts of the case show that the peril complained of was caused by the progress of the work of unloading the boat and that the case is within the rule of *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429, and the cases cited in the opinion on page 217. It must be said here as declared in that case:

"In the light of these authorities it is entirely obvious that the conditions which caused the place where plaintiff worked to be unsafe were not provided by the master, but had been created by the very force of men of which plaintiff was one."

All of the men engaged to unload the boat were engaged in the common work of removing the freight from the boat. To accomplish the task, the condition of their working places had necessarily to be changed and adjusted continually to meet the varying exigencies of this process. It is obvious that no foresight could provide against the dangers springing from the

conditions incident to such changes and that no warning could be given. In such an employment the employee of mature years and intelligence must be held to appreciate the hazards and risks created by the changing conditions of his work, and it follows that he assumes them as a part of the service.

It is urged by the respondent that the foreman's knowledge of the danger was superior to that of the plaintiff. We find no basis for this claim. The situation and arrangement of the pile of sheet steel at which he was working and the relation of the working place thereto were certainly as well known to the plaintiff as to the foreman. They were open and obvious to the eye of every person engaged in the work of unloading the boat and could certainly be noticed and comprehended as readily by the plaintiff as by the foreman. Indeed, it appears that the plaintiff was so circumstanced that the dangers of which he complains could be readily observed by him and his attention would be as readily attracted to them as that of the foreman. Nor is there any force in the claim that the plaintiff, whose attention was directed to the performance of his work under the urgent orders of the foreman to make haste, was in a less favorable position than the foreman for observing the danger of the pile of sheet steel falling over. This danger was so open and obvious that there would be no marked difference in the opportunities of the plaintiff and the foreman for observing it. A mere glance at the situation and condition of things disclosed them all, and informed the observer of the condition of the place wherein the work was to be done, the nature of the piling of the sheet steel, and the danger of its falling over from the movements of the boat caused by the action of the water or any other force. To require the defendant to give warning of such a condition would be to compel the defendant to protect the plaintiff from dangers concerning which it must be held the plaintiff, in the exercise of reasonable care, would be fully as well informed as was the defendant. We find no evidence establishing defend-

ant's liability, and the motion to direct a verdict for the defendant should have been granted.

*By the Court.*—Judgment reversed, and the cause remanded with directions to grant defendant's motion to direct a verdict and to dismiss the complaint.