VAN DINTER, Respondent, vs. WORDEN-ALLEN COMPANY, Appellant.

*November 22—December 10, 1912.*
*May 3—May 31, 1913.*

*Master and servant: Injury from unsafe hoisting apparatus: Assumption of risk: Warning of danger: Questions for jury: Pleading: Amendment to conform to proof: Special verdict: Inconsistency.*

1. Plaintiff, a carpenter employed by defendant, was engaged with others in raising heavy beam joists to the third story of a building by means of a hoisting apparatus consisting of a block and tackle attached to a so-called horse, the legs of which rested upon planks lying upon and projecting a little in front of the

joists already set in place. As he stood waiting to receive a joist which the men below were so raising, one of the planks upon which the horse rested tilted up at the rear, swung around, and knocked him from the timber on which he was standing, so that he fell to the ground and was injured. Upon the evidence—which tended to show, among other things, that plaintiff had adjusted the apparatus as directed by defendant's superintendent; that he had had no experience with a hoist like this one, and had only observed the operation of raising one joist, which came up safely; and that at the time of the accident the men below at the rope, instead of pulling directly downward, pulled sidewise towards the plank which tilted—it is *held* that the question of plaintiff's contributory negligence or assumption of the risk was one for the jury.

2. The complaint did not charge that defendant was negligent in failing to warn plaintiff of the unsafe conditions, but before the special verdict was submitted a motion was made that the complaint be amended to conform to the evidence on that subject. The court did not then specifically decide such motion, but stated that it would do so, and then proceeded to submit the issues as if the pleading were so amended, and subsequently treated the case as though the amendment were allowed. *Held*, that this was equivalent to allowing the amendment, and that the question as to whether defendant should have warned the plaintiff was properly included in the special verdict.

3. A master is under no obligation to warn a servant of dangers which are open and obvious to a person of the servant's experience and understanding.

4. Findings in a special verdict to the effect that it was the master's duty to warn a servant as to certain dangers, and that the servant in the exercise of ordinary care ought to have known and appreciated such dangers, are inconsistent and cannot be reconciled.

BARNES and VINJE, JJ., dissent.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Action for personal injuries. The defendant was engaged in building an addition to the plant of the Power & Mining Machinery Company, at the village of Cudahy, under an independent contract. The plaintiff, a man forty-four years of age, who had worked at the carpenter trade for twenty-eight

years, was employed by defendant as such carpenter and joiner. On the 6th of July, 1910, plaintiff was directed by the defendant to receive, place, and lay in the third story of the building then under construction, beam joists for the support of the floor to be laid in such story. The longitudinal timbers for the support of such beam joists were in place for receiving them. These extended east and west, and the joists that were to be laid extended north and south. The space between the timbers upon which the joists were to be laid was about sixteen feet, and the joists were being placed or set in these timbers crosswise about four feet apart. The joists were about sixteen feet in length and about 8 x 12 inches thick. The plaintiff was standing on the north longitudinal timber receiving the joists to be set in place as they were hoisted from the ground. The hoisting was being done by the men below by means of a block and tackle attached to a so-called horse which rested on the joists that were already set in place. This horse device consisted of a plank twelve inches wide by three inches thick and about twenty feet long, set edgewise, with two legs consisting of 2 x 4 timbers fastened to the sides about eight feet from the front end, V shaped, and each resting upon a board, which lay flat on the joists and projected in front of the last joist laid and ran back parallel with each other to the tail end of the horse about twenty feet. There was a spread of three or four feet between the legs at their bottom. As the apparatus was being operated by the plaintiff and his helper, also a carpenter, when a joist was to be raised they placed the legs of the horse near the front ends of the two boards, a little forward of the last joist that had been placed. The tail end of the hoist, which was set edgewise and formed the back of the horse, was lashed to a joist by means of a rope, leaving the two boards on which the legs of the horse rested loose. One end of the rope which passed through the pulleys of the block and tackle was fastened to the joists

to be raised, and the men below, five or six in number, pulled at the other end of the rope, thereby raising the joist. Each joist weighed from 350 to 400 pounds. When it reached the proper level it was received by plaintiff and set in place. They would then untie the tail end of the horse, move the apparatus forward about four feet to the joist which had just been placed, and the same operation would be repeated. While one of the joists was being thus hoisted and the plaintiff was standing to the side on the north longitudinal timber waiting for the joist to come up, one of the loose boards on which the legs of the horse rested, by reason of the pressure exerted at the front end, tipped up at the rear and slued around, knocking the plaintiff off the timber on which he was standing, as the result of which he fell to the ground and sustained the injury for which this action was brought.

A special verdict was returned finding (1) that the hoist which was being used and operated at the time the plaintiff was injured was not safe, suitable, or proper and not so constructed, placed, and operated as to give proper protection to the life and limb of a person so employed or engaged as the plaintiff was at the time of the accident; (2) that the use of the hoist in that condition was the proximate cause of plaintiff's injury; (3) that the defendant in the exercise of ordinary care ought reasonably to have anticipated that said hoist was unsafe, unsuitable, or improper and not so constructed, placed, and operated as to give proper protection to the life and limb of a person employed or engaged as the plaintiff was at the time he was injured; (4) that the plaintiff at the time he was working with said hoist did not know and comprehend the danger from using said hoist in the condition in which it then was; (5) that the plaintiff in the exercise of ordinary care ought to have known and appreciated that unless the boards on which the legs of the hoist rested were securely fastened or held down at or near the rear end of said

hoist they were liable to tip up during the operation of hoisting as it was being carried on, and to cause some such accident as the one which happened to the plaintiff; (6) that the plaintiff in the exercise of ordinary care ought to have discovered and appreciated such danger before the accident; (7) that the defendant in the exercise of ordinary care ought to have notified and warned the plaintiff of the danger of operating the said hoist; unless the boards on which the legs of the hoist rested were securely fastened or held down at or near the rear end of said hoist, they were liable to tip up during the operation of hoisting as it was being carried on, and to cause some such accident as the one which happened to the plaintiff; (8) that such failure to warn the plaintiff was the proximate cause of his injury; (9) that no want of ordinary care on the part of the plaintiff contributed proximately to his injury; and (10) damages $6,500.

Defendant objected to the submission of question 7 on the ground that there were no issuable facts to make its submission proper, also to question number 1. After verdict, defendant moved for judgment, either on the verdict or on the evidence, and failing that, that question 7 be stricken out, the answer to question 8 changed from Yes to No and the answer to question 9 changed from No to Yes, and for judgment on the verdict as so changed. The plaintiff also moved for judgment upon the verdict, and failing that, moved that the answers to questions 5 and 6 be changed from Yes to No, and for judgment upon the verdict as so changed, and failing that, moved for a new trial on the ground of the verdict being inconsistent.

The court ordered the verdict set aside, granted a new trial, and denied all the other motions. From such order the defendant appealed.

For the appellant there were briefs by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *C. F. Fawsett.*

For the respondent there was a brief by *H. M. Sheets,* attorney, and *Jared Thompson* and *Herbert J. Piper,* of counsel, and oral argument by *Mr. Sheets.*

The following opinion was filed December 10, 1912:

VINJE, J.    There is practically no dispute in the evidence as to how plaintiff was injured. The statement of facts shows precisely what happened and how it happened. The legs of a hoist, which was required to support a weight of from 350 to 400 pounds, in addition to a portion of its own weight, rested upon the ends of two one-inch horizontal boards in front of their support—the rear ends being unfastened. It is apparent that the fastening of the tail end of the plank of the hoist would have no tendency whatever to prevent the weight on the legs from tipping up the rear ends of the loose horizontal boards. That the natural and inevitable tendency of the weight on the legs was to lower the ends on which they rested and tip up the other ends is a fact of which every child using a teeter or see-saw is fully aware. That they would so tip up whenever the weight in front of the support overcame the weight to the rear thereof is equally obvious. That a weight of from 350 to 400 pounds, in addition to the weight of about two thirds of the hoist, though applied only a few inches in front of the support, was likely to overcome the weight of that portion of the boards lying back thereof, is also quite apparent. It is inconceivable that a carpenter of twenty-eight years' experience should not be cognizant of these facts. He knew just how the hoist was placed, how it was fastened, and what work it had to do. He knew also that any downward pressure or weight upon the legs would tend to raise the rear ends of the boards on which they were placed. In short, he knew everything the master could have told him relative not only to the manner in which the hoist was constructed and placed, but also to the effect of using it

in such manner as it was used. The mechanical appliance, operation, and resultant danger were so simple and obvious that comment thereon serves only to confuse. One who cannot appreciate such danger from a view or mental picture of the situation itself is not likely to do so through the medium of argument or explanation. Fully knowing and appreciating such situation, plaintiff must be held as a matter of law to have assumed the risk.

Sec. 1636—81, Stats., does not abolish the defense of assumption of risk or contributory negligence. *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179; *Williams v. J. G. Wagner Co.* 110 Wis. 456, 86 N. W. 157; *Knisley v. Pratt,* 148 N. Y. 372, 42 N. E. 986; *Caddy v. Interborough R. T. Co.* 195 N. Y. 415, 423, 88 N. E. 747; *Schmitt v. Rohn,* 110 N. Y. Supp. 1086; *O'Maley v. South Boston G. L. Co.* 158 Mass. 135, 32 N. E. 1119. This question is fully treated in the first case cited, and it is deemed unnecessary to say more here than merely to refer to it.

It follows logically from what has been said that no duty devolved upon the defendant, though found to exist in answer to question 7, to warn plaintiff of the danger. For somewhat analogous cases see *Dougherty v. West Superior I. & S. Co.* 88 Wis. 343, 60 N. W. 274; *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W. 362; *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049; *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350, 119 N. W. 289; *Ladwig v. Jefferson Ice Co.* 141 Wis. 191, 124 N. W. 407; *Brotzki v. Wis. G. Co.* 142 Wis. 380, 125 N. W. 916; *Brown v. Conners,* 149 Wis. 403, 135 N. W. 857.

That the answers to questions 5, 6, and 9 are not inconsistent is decided and clearly shown in the case of *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633. Assumption of risk and absence of contributory negligence may co-exist. The former relates to the assumption by the plaint-

iff of a risk already in existence at the time it is assumed; the latter, to conduct on his part that increases an existing risk, or creates or contributes proximately to a new one.

The court should have changed the answer to question 7 from Yes to No, and, upon the verdict so changed, rendered judgment for defendant.

*By the Court.*—Order reversed, and cause remanded with directions to change the answer to question 7 from Yes to No, and, upon the verdict so changed, to render judgment for defendant.

The following opinion was filed December 12, 1912:

TIMLIN, J.    This is an appeal from an order granting a new trial on the ground that the special verdict was inconsistent.    There is no question, I think, but that the findings of the special verdict are inconsistent with one another, but the majority opinion disposes of the case on the merits and orders judgment for the defendant on the theory that the undisputed evidence shows assumption of risk.

I cannot assent to this disposition of the case, but think the order appealed from should be affirmed.  The statement of facts in the majority opinion is correct and need not be here repeated except in one particular, and that is the point upon which the case turns.

The two "boards" mentioned in the majority opinion upon which the legs of the "horse" rested were planks three inches thick and twenty feet long and probably twelve inches wide. They projected eighteen or twenty inches east of the easterly joist, and the legs of the "horse" rested on them eight inches or a foot east of the east joist.  (East is toward the high end of the "horse" to which the hoisting tackle was fastened; west, to the low end of the "horse" which was tied down to a joist with a rope.)  When this is added it is not quite so obvious that these "boards" would tip up in hoisting a piece of

timber weighing 350 to 400 pounds. We must bear in mind that the burden of proof is upon the defendant, and omissions in the evidence count in favor of the plaintiff. The appliance had been in use several years, although it was new to the plaintiff. There is evidence that he handled and adjusted it as directed by the superintendent and that he had hoisted into place with it one joist with safety, but while hoisting the second one he was injured by one of these planks tilting up and swinging sidewise and striking him. Upon these facts and at common law no negligence of the defendant was shown, but defendant's negligence results from the statute, sec. 1636—81 (Supp. 1906: Laws of 1901, ch. 257). Now the assumption of risk is found on the foregoing facts by the majority opinion notwithstanding this burden of proof and notwithstanding the plaintiff testified he did not know of this danger and notwithstanding that no member of this court can now say without making experiment that 350 or 400 pounds, or rather one half of that weight, would tilt up a three-inch twenty-foot plank with a leverage of eight inches or a foot. It is not even shown of what timber these planks were, nor is there any estimate of their weight nor of the weight which would be required to uptilt the plank when applied eight inches or one foot from the fulcrum, seventeen and one-half feet of the plank projecting on the other side of this fulcrum. It is also noticeable that only one of the planks tilted up and swung around, and that there is affirmative evidence that the tilting and swinging of this was caused by the hoisting crew on the lower floor pulling sideways, thus making a case of an appliance condemned by statute with negligence of fellow-servants contributing to cause the injury. The defendant introduced this plaintiff to the appliance in question, which had been used by defendant for several years as a derrick or hoist. The defendant's superintendent states that he instructed the plaintiff in general language to fasten down the rear end of the contrivance. Plaintiff denies this

and claims he was instructed to fasten down with a rope the lower end of the so-called "horse." This it is admitted he did.

Mr. Justice KERWIN, I am authorized to say, concurs in this dissent.

Upon motion of the respondent a rehearing was granted on March 11, 1913, and the cause was again argued on May 3, 1913.

For the appellant there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *C. F. Fawsett.*

For the respondent there was a brief by *H. M. Sheets, H. J. Piper,* and *Jared Thompson,* and oral argument by *Mr. Piper.*

The following opinion was filed May 31, 1913:

SIEBECKER, J. The plaintiff at the time of injury was working for the defendant as a carpenter and was assisting in the construction by defendant, as independent contractor, of an addition to the Power & Mining Machinery Company's plant at the village of Cudahy. Detailed statements of the facts of the case were made by the court, and in the opinion of the dissenting justices, when the case was determined on appeal by this court on December 10, 1912, to which we make reference to avoid unnecessary repetition (*ante,* p. 533, 138 N. W. 1016). Upon motion by the respondent a reargument of the case has been had, and upon re-examination of the questions presented we are satisfied that in our former conclusions the law was not correctly applied to the case and that the order of the circuit court granting a new trial must be affirmed. Upon the former consideration of the case the court was led to a conclusion which disposed of the case upon the merits, upon the ground that under the evidence it appeared, as a matter of law, that the plaintiff had assumed the risk of the hazard and for this reason he had established no cause of action.

Plaintiff rests his case on the rights and liabilities as defined by sec. 1636—81, Stats., which provides that:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances, which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection, to the life and limb of a person so employed or engaged."

The history of this law has been fully set forth in *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179. That the hoist in question is one of the appliances specified in the statute cannot be questioned. It was held in the *Koepp Case* that the legislature intended to make employers absolutely liable as to the safety of employees in the situation embraced in the statute, except when the injured person assumed the risk or was guilty of contributory negligence. The court there adopted the declaration of the court in *Gombert v. Mc-Kay,* 201 N. Y. 27, 94 N. E. 186, as expressive of the legislative purpose, which was in substance that:

"It in terms absolutely forbids those employers to furnish or operate or cause to be furnished or operated any apparatus therein mentioned of the character and quality described by it. It, in its effect, provides that any employer who either personally, or by another, furnishes for the performance of any named labor a forbidden article, shall be responsible therefor."

In applying this law to the instant case it is of controlling importance to keep in mind that the defendant is forbidden to furnish a hoist which is unsafe, unsuitable, or improper and to so place and operate it as not to afford the employee proper protection to his life and limb. The question whether the hoist was suitable, safe, and proper, and whether it was so placed and operated as to give proper protection to the

employees engaged in the erection of the building, was neg-
atived by the jury. The jury also found that plaintiff did
not know and comprehend the danger of using the hoist in
the condition it was, and that the plaintiff, in the exercise of
ordinary care, ought to have discovered and appreciated the
danger attending its use. This court, as above stated, upon
the original hearing of the case considered that, upon the
facts and circumstances shown by the evidence, it must be
held, as a matter of law, that the plaintiff ought, in the ex-
ercise of ordinary care, to have known and appreciated such
danger and hence he assumed the risk. There is evidence
tending to show that the plaintiff followed the direction given
him to tie the plank to which the hoisting tackle was attached
to a joist with a rope and that he did this in the manner di-
rected by defendant's superintendent, and that he placed the
planks supporting the horse, holding the plank with tackle, as
directed and as they had been placed to hoist the first joist,
which was successfully accomplished. It also appears that
the plaintiff had not operated this hoist before this morning
and had only observed the operation of raising one joist, and
that he had had no experience with a hoist like this one,
though he had worked at hoists, used for this purpose, of dif-
ferent construction. He testified to the effect that he at-
tempted to place the legs of the horse, supporting the hoist
plank, near the joist on which the two planks supporting the
horse lay, or a little ahead of it, but that he did not measure
it; that he intended to place it a little forward—eight inches
or a foot. He also states that he thought everything was all
right so long as it worked right; that he did not understand
it could tip over as it did, and that he did this work and set
up the hoist and fastened it as directed. The horse was sup-
ported by three-inch twenty-foot planks. The weight of the
joist to be raised was estimated at from 350 to 400 pounds.
There is also evidence that the men at the rope below, doing
the hoisting, pulled sideways instead of directly downward,

and that the accident was caused by the plank on the side toward which this pulling was done tilting up at the rear end, swinging around, striking the plaintiff, and knocking him off from the girder he stood on, causing him to fall to the bottom of the building. True, there is also evidence showing that the plaintiff knew how the apparatus was constructed and how it was being operated. This, however, does not indisputably establish the fact that the dangers incident to operating the hoist were so open and obvious that a reasonably prudent person, under the circumstances, ought to have appreciated and observed them. We are persuaded that the record presents a state of facts from which fair-minded men may honestly draw different conclusions, and that the question of the plaintiff's contributory negligence or his assumption of the risk, under the evidence, is of such uncertainty as to present questions for determination by the jury. This conclusion is supported by the trial court on its submission of these issues to the jury, because he concluded there was room in the evidence for conflicting inferences. Re-examination of the case has convinced us that the trial court's ruling on this question was right and that our former conclusion, holding that the record shows the plaintiff assumed the risk as a matter of law, is erroneous.

It is contended that the trial court erred in submitting to the jury the question whether or not defendant, in the exercise of ordinary care, ought to have warned the plaintiff of the unsafe conditions under which the hoist was being operated, upon the ground that the pleadings in the case presented no such issue. The court submitted this issue to the jury and they found against the defendant on the question, and also that such failure to warn was the proximate cause of the injury. It appears that the plaintiff's attorneys, after the evidence had all been received, requested that the complaint be amended to conform to the evidence in this respect. The court did not then specifically rule on the matter requested;

but stated that he would do so, and then proceeded to submit the issues as if the pleading were so amended, and subsequently treated the case as though the amendment were allowed. This course of procedure must be considered equivalent to allowing the amendment. It is considered that the question was properly included in the verdict. Upon this question (No. 7 of the verdict) the court instructed the jury that the employer "must warn him [plaintiff] of all dangers to which he will be exposed in the course of his employment, except those which the employee may be deemed to have foreseen as necessarily incident to his employment or which may be open and obvious to a person of his experience and understanding." By their answer the jury found it was the defendant's duty to give the plaintiff warning of the dangerous condition of operating the hoist as it did. By questions 5 and 6 of the verdict the jury found that the plaintiff, in the exercise of ordinary care, ought to have known and appreciated these dangers. The jury found that the hoist furnished by the defendant was not safe, as required by the statute, and that such unsafe condition proximately caused the injury. These facts render the defendant liable unless it be found that plaintiff either assumed the risk or was guilty of contributory negligence. The vital issues of fact, therefore, were whether or not the plaintiff had assumed the risk or had been guilty of contributory negligence. It is clear there is an irreconcilable conflict in the facts found by the jury in their findings under questions 5 and 6 and question 7, as pointed out by the court. If the danger was so open and obvious that plaintiff ought to have appreciated it, then, as the court instructed the jury, the defendant was under no obligation to warn the plaintiff. The trial court so held and for that reason properly awarded a new trial of the case.

*By the Court.*—The order appealed from is affirmed.

BARNES and VINJE, JJ., dissent.