MURRAY, Appellant, vs. PAINE LUMBER COMPANY. Respondent.

*December 10, 1913—January 13, 1914.*

*Trial: Special verdict: Answer construed in light of instructions: Conflicting findings: Presumption on appeal: Master and servant: Injury: Assumption of risk: Unsafe scaffold: Change made in progress of work.*

1. The effect of an answer in a special verdict must be determined in the light of the instructions given in connection with the question, and it may be broader than the mere wording of the question would imply.
2. Assumption of risk and absence of contributory negligence may co-exist.
3. An affirmative answer to a question, "Did the plaintiff voluntarily use the platform in its changed condition?" after a finding that he took part in making the change in question, did not in terms constitute a finding upon the issue of plaintiff's assumption of the risk; but where the court in connection with such question instructed the jury that a servant voluntarily using a dangerous structure or machine with knowledge of its condition assumes the risk, it would, if standing alone upon that issue, constitute such a finding.
4. Where, however, the court by its instructions in connection with a question upon the issue of contributory negligence, sub-

mitted under that question the issue of whether or not plaint-
iff assumed the risk, and the jury returned a negative an-
swer, such answers were conflicting and would warrant judg-
ment for neither party.

5. Defendant having requested the submission of a question clearly
presenting the issue of assumption of risk, which was refused,
no finding upon that issue in defendant's favor can be pre-
sumed under sec. 2858m, Stats., unless it can be held as a
matter of law that plaintiff did assume the risk.

6. In an action for personal injuries alleged to have been caused
by a defective scaffold or platform upon which plaintiff was
working, the defense of assumption of risk is available to the
defendant.

7. The facts that plaintiff assisted other workmen in changing
one joist in a scaffold and that he heard another employee
advise the person nailing it to put in more spikes, to which
the latter replied that it was strong enough, were not suffi-
cient to charge plaintiff with assumption of the risk as a
matter of law.

8. Where such change was necessary to allow the performance of
work with which the timbers of the original scaffold inter-
fered, and was made in the presence and with the consent of
defendant's foreman, the statutory duty to furnish a safe
scaffold applied to the structure as changed.

9. Such single alteration in the scaffold did not render applicable
the rule relative to a place of work which is constantly chang-
ing during the progress of the work.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Action for a personal injury. The defendant, *Paine
Lumber Company,* desired to replace an old wooden veneer
vat, about forty-three feet long east and west, sixteen feet
wide, and eight feet deep, with a concrete one. In order to
do so it became necessary to remove the dirt and rubbish in,
and floor of, the old vat as well as the side walls. For the
purpose of facilitating the work of removing the dirt, rub-
bish, and floor, a scaffold about four feet in height from the
bottom of the vat, and about six feet wide and ten or twelve
feet long east and west, was built near the south side of the
vat extending to within a few feet of the west end thereof.

It was supported by 2 x 6 joists, which were nailed at the south end to some old piles and at the north end to new 6 x 6 upright timbers standing upon the bottom of the vat near its middle. The dirt and rubbish was shoveled on to the scaffold and from there out of the vat and removed. When the crew, of which plaintiff formed a part, came to remove the floor planks of the vat they found that the joist of the scaffold at the east end hindered them in handling the planks, so they put in a new joist, nailing it at the south end to one of the old piles and at the north end to one of the upright timbers in the middle of the vat located further east than the one to which the original joist was nailed. The effect of this was to extend the scaffold somewhat to the east, and boards were laid over the old scaffold and the new joist, and the original east joist was then removed. The jury found that the plaintiff assisted in making this change. There was evidence to show that while the new joist was being spiked to the pile plaintiff held it, and that one Erdman said, in plaintiff's hearing, "You fellows ought to put in a few more spikes, for it would not hold," and that someone said in reply that it would hold all right. While plaintiff and another were upon the scaffold assisting in removing planks three inches in thickness, twelve to fourteen inches wide, and twelve to fourteen feet long, which had formed the floor of the old vat and which were water-soaked and weighed about 250 pounds each, the northeast corner of the scaffold gave way and plaintiff was precipitated to the bottom and injured. The testimony tends to show that the spikes of the new joist driven into the old pile at the south end pulled out, causing the scaffold to fall. The evidence as to the exact location, dimensions, and construction of the scaffold is contradictory and confusing, but the facts above stated seem to be fairly established by the evidence. The plaintiff and his witnesses denied that there was any change made in, or extension to, the old scaffold, or that plaintiff assisted therein.

By special verdict the jury found as follows:-

"(1) Was the plaintiff injured at the time and place alleged in the complaint by the fall of said scaffold? *A.* (by the court). Yes.

"(2) Was said injury caused by any want of ordinary care and prudence on the part of the defendant? *A.* Yes.

"(3) If you answer the above question 'Yes,' then was such want of ordinary care and prudence on the part of the defendant the proximate cause of said accident and injury? *A.* Yes.

"(4) Was the said platform or scaffold as originally furnished and erected by the defendant in said vat so erected, placed, and constructed by it in a safe, suitable, and proper manner and so as to give proper protection to the life and limb of persons using the same? *A.* No.

"(5) If you answer the above question 'No,' then was such want of safety and suitableness the proximate cause of the accident and plaintiff's injury? *A.* Yes.

"(5½) Was said platform altered and changed shortly before the accident? *A.* Yes.

"(6) Did the plaintiff, *Murray,* assist and take part in altering and changing the said platform or scaffold shortly before the said accident? *A.* Yes.

"(7) If you answer question No. 6 'Yes,' then was such change in the construction of the platform the proximate cause of said accident? *A.* Yes.

"(8) If you answer either of questions 6 or 7 'Yes,' then did the plaintiff voluntarily use the platform in its changed condition? *A.* Yes.

"(9) Did any want of ordinary care and prudence on the part of the plaintiff contribute to the injury? *A.* No.

"(10) If the plaintiff is entitled to recover at what sum do you assess his damages? *A.* $1,000."

The court entered judgment upon the special verdict of the jury dismissing plaintiff's complaint and cause of action on the merits. From such judgment the plaintiff appealed.

For the appellant there were briefs by *Gill & Barry,* attorneys, and *M. H. Eaton,* of counsel, and oral argument by *Mr. Eaton.*

For the respondent there was a brief by *Thompson, Thompson & Jackson,* attorneys, and *Charles Barber,* of counsel, and oral argument by *Mr. Carl D. Jackson* and *Mr. Barber.*

VINJE, J.  After the rendition of the verdict plaintiff moved the court to change each of the answers to questions $5\frac{1}{2}$, 6, and 7 from Yes to No, and that the plaintiff have judgment upon the verdict as amended by the court, or, in case the court refused to change the said answers or any of them, that the plaintiff have judgment upon the verdict as rendered.  The court refused each and every one of plaintiff's motions, and upon motion of the defendant entered judgment in its favor.  Whether the trial court in so doing was of the opinion that by its answer to question No. 8 the jury found that plaintiff assumed the risk, or whether the court was of the opinion that the question of plaintiff's assumption of risk was not passed upon by the jury and it found relative thereto in favor of the defendant, does not appear from the record.  Question No. 8 does not in terms constitute a finding upon the issue of plaintiff's assumption of risk.  The instructions relative thereto, however, given by the court are broad enough to include such issue.  The court said:

"If an employee knows that a structure or machine is unsafe and dangerous he has the right to refuse to use it.  If he does use it, with such knowledge, he assumes the risk.  Now, did the plaintiff go on this platform and use it voluntarily, or was he compelled to go there by order of some superior officer?  That is for you to determine from all the evidence and answer either Yes or No.  The words 'voluntarily used' mean using the scaffold with full knowledge of a change of condition."

The jury returned an affirmative answer to the eighth question, and if that stood alone in the special verdict upon the issue of plaintiff's assumption of risk it would, taken in

connection with the above instruction, constitute a finding to the effect that plaintiff assumed the risk. But the court in submitting the ninth question, which was, "Did any want of ordinary care and prudence on the part of the plaintiff contribute to the injury?" instructed the jury as follows:

"An employee is bound to take notice of such dangers as are open and obvious, and are equally open to his observation as to that of his employer. If he is of mature age and ordinary intelligence, he is presumed to know the dangers which by the exercise of ordinary care and prudence he might have ascertained. *As to all such he assumes the risk.* But he does not assume the risk of such dangers as are hidden and concealed and known to the employer but not known to him. *Now, was the manner of the construction of this platform known to the plaintiff?"*

This instruction also submits under this question the issue of whether or not the plaintiff assumed the risk, and the jury answered the question in the negative. It is therefore impossible to tell whether the jury found in favor of or against the plaintiff upon this issue. That there may be an assumption of risk and absence of contributory negligence is well settled. *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633; *Dodge v. Kaufman,* 152 Wis. 171, 139 N. W. 741; *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 138 N. W. 1016, 142 N. W. 122. And had the instructions under question 9 related solely to contributory negligence there would have been no conflict in answers to questions 8 and 9. But the effect of an answer must be determined in the light of the instructions given in connection with the question, and it may be broader than the mere wording of the question itself would imply. *Panoff v. C., M. & St. P. R. Co., ante,* p. 99, 143 N. W. 1070. So the difficulty here is that, taken in connection with the instructions given, the answers to questions 8 and 9 are conflicting. The better practice would have been to submit a specific question as to whether or not plaintiff assumed the risk. Such question

was in substance requested by the defendant to be given. It asked for the submission of this question: "Ought the plaintiff, *Murray*, in the exercise of ordinary care, to have known of the danger, if any, of using the platform on which he was injured, as it was used in the condition it was in at the time of the accident?" In the margin of the record, opposite this question, in pencil, is the notation "embraced in con. negligence," said to have been made by the trial judge. It is apparent, however, that in rendering judgment for the defendant the trial judge did not consider that the question of plaintiff's assumption of risk was included in the question of contributory negligence, for the jury answered that question in the negative. Such answer, unchanged, together with the other answers of the special verdict, exclusive of the answer to question No. 8, entitled the plaintiff to judgment. If the answer to question 8 was considered the court could give judgment to neither party, for since the defendant requested the question relative to the issue of plaintiff's assumption of risk to be submitted to the jury, and it was not submitted, the court could make no finding thereon in its favor, unless it could be held as a matter of law that plaintiff assumed the risk. Sec. 2858m, Stats. 1911. That the defense of the assumption of risk was available to the defendant in this case is held in *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 139 N. W. 179; *Kosidowski v. Milwaukee,* 152 Wis. 223, 139 N. W. 187; *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 138 N. W. 1016, 142 N. W. 122.

Defendant claims that from the evidence in the case it should be said as a matter of law that plaintiff assumed the risk. We have, however, been unable to come to this conclusion, and are of the opinion that the question of plaintiff's assumption of risk is one for the jury. Our attention is called to the case of *Gombert v. McKay,* 201 N. Y. 27, 94 N. E. 186, said to be decisive of this case. It was there found that the injured employee knew fully and accurately

the materials and manner of construction of the scaffold, that he was a man of extended experience as to the building and uses of scaffolds, and approved the plan devised by his fellow workmen for the erection of the one upon which he was injured, and the court held that he assumed the risk and therefore defendant was not liable. In the case at bar we have no such state of facts. It is true the evidence shows that the plaintiff assisted in making the change in the scaffold by holding the joist while it was being nailed. But it does not appear that he knew the condition of the piling to which the south end of the joist was spiked nor that he knew of the number of spikes that his fellow workmen used in spiking it to the piling. The fact that Erdman advised the employee who did the spiking, in the presence of plaintiff, to use more spikes, taken in connection with the reply of the workman that it was strong enough and would hold, cannot be said as a matter of law to charge plaintiff with the assumption of risk.

Under the statute (sec. 1636—81, Stats.) it became the duty of the employer to furnish a safe and suitable scaffold for the use of the employee. It is argued that the scaffold originally furnished was safe and suitable, and that it became unsafe by reason of the change voluntarily made by the employees themselves. The change was necessitated by the nature of the work, and it appears that defendant's foreman, Montgomery, was present, saw that it was made, and acquiesced therein. It must therefore be held that the scaffold as changed was in fact the scaffold which the employer was required to furnish the employees, and that the statutory duty to furnish a safe scaffold applied as well to the change or addition thereto as to the scaffold as originally constructed.

The defendant cites the cases of *Brown v. Conners,* 149 Wis. 403, 135 N. W. 857; *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429; *McKillop v. Superior S. Co.* 143 Wis. 454, 127 N. W. 1053; *Howard v. Belden*

*ville L. Co.* 129 Wis. 98, 108 N. W. 48; *Crams v. C. Reiss C. Co.* 125 Wis. 1, 102 N. W. 586; and *Richter v. Union L. Co.* 153 Wis. 261, 140 N. W. 1126, in support of the doctrine that an employer cannot be held liable for furnishing an unsafe place for work where such place is changed by the workmen themselves in the course of their work. So far as the scaffold in question is concerned, this is not such a case. It became necessary to make a single alteration in it in order to enable the workmen to better and more expeditiously do their work. So far as the scaffold was concerned, it was not a place- of work that necessarily changed during the progress thereof within the meaning of the cases cited.

Because of the inability to determine from the special verdict, taken in connection with the instructions of the court, what the jury's finding was upon the issue of plaintiff's assumption of risk, the judgment must be reversed and the case remanded for a new trial.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.