VAN DINTER, Respondent, vs. WORDEN-ALLEN COMPANY,
Appellant. ·

*October 27—November 17, 1914.*

*Appeal: Law of the case: Questions for jury: Master and servant:
Unsafe hoisting device.*

1. The decision, on a former appeal, that upon the evidence at the
   first trial of the case certain questions were for the jury, is the
   law of the case upon a second appeal after a second trial at
   which the evidence was substantially the same.
2. In an action for injuries sustained by a carpenter while assist-
   ing a crew of men to raise heavy joists to the third floor of a
   building by means of a hoisting device consisting of tackle at-
   tached to a so-called horse, the evidence is *held* to sustain a
   finding by the jury that the hoist was not (as required by sec.
   1636—81, Stats. 1911) so constructed, placed, and operated as to
   give proper protection to the life and limb of the plaintiff en-
   gaged in the performance of the work then being done.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action for personal injury. On July 6, 1910, the plaint-
iff, aged forty-four, and a carpenter by trade for over twenty-
five years past, was assisting a crew of men in raising joists
in a building being constructed by the defendant. The joists
were raised by means of a hoisting device called a "horse" to
the third floor, about forty-three feet from the ground, where
they were set into long, heavy girders fourteen inches wide
and twelve inches thick.

The hoisting device or horse was constructed of a plank
twenty feet long, twelve inches wide, and three inches thick
set edgewise, with two legs four inches wide and two inches
thick spiked on about five and one-half or six feet from the
front end. The legs were about four or five feet long, had
a spread at the bottom of about three and one-half or four
feet, and were connected by a cross brace about six or eight
inches from the bottom. They were placed on two planks

twenty feet long, twelve inches wide, and three inches thick, which projected eighteen to twenty-four inches in front of the last joist laid, and rested thereon at a point eight inches to one foot in front of the last joist. The planks were laid east and west or at right angles to the joists. The tail of the horse, or the rear end of the twenty-foot plank, was lashed to the fourth joist back from the last joist laid at a point about one or one and one-half feet from the end thereof. The joists were laid four feet apart. A two-sheave block was tied to the projecting end of the horse about two feet from the front. A single sheave block, which was tied to the joist being raised, was used below.

The hoist was operated as follows: A joist was tied to the single sheave block and was raised by men pulling on a rope which was tied to the single block, passed up through the double block, down through the single block, and again up through the double block, and from there down to the men. The joists being raised were sixteen feet long, twelve inches wide, and six inches thick, and weighed about 400 pounds. As each joist was set in place the tail of the horse was unlashed and the horse and the planks upon which it rested were moved forward to permit the raising of another joist.

At the time of the accident eight or ten men were pulling on the rope. They did not pull directly down, but ran to the south eighteen or twenty feet, or at right angles to the long plank of the horse, causing the weight to be thrown unequally on the legs and the rear end of one of the planks upon which the legs rested to tilt up and swing around, striking the plaintiff and causing him to fall. At the time he was struck he was standing on one of the girders into which the joists were set. There were no planks or boards laid crosswise upon the joists already set upon which the men could walk or stand. They had to walk upon the joists or girders. A number of joists had been set when plaintiff was called upon to assist, and the accident happened when they were hoisting the second joist.

The jury found (1) that the hoisting contrivance · which was in use when the .plaintiff 'was injured was not so constructed, placed, and operated as to give proper protection to the life and limb of the plaintiff engaged in the performance of the work then being done; (2) that the failure· of the defendant to cause the hoist to be so constructed, placed, and operated as to give proper protection to the life and limb of a person engaged as the plaintiff was at the time of his injury was the proximate cause of plaintiff's injury; (3) that the defendant, in the exercise of ordinary care, ought to have warned the plaintiff of the danger incident to the operation of the hoist in the manner in which it was being operated at the time of the plaintiff's injury; (4) that such failure to warn the plaintiff was the proximate cause of his injury; (5) that the plaintiff was not guilty of any .want of ordinary care in placing the hoist which directly and proximately contributed to the cause of his injury; (6) that a person of plaintiff's age, intelligence, and experience, in the exercise of ordinary care, ought not to have realized the danger from the operation of the hoist in the manner in which it was being operated before his injury, in time to have avoided the injury to himself; (7) that no want of ordinary care on the part of plaintiff proximately contributed to produce his injury; and (8) damages in the sum of $6,750.

· From a judgment in favor of plaintiff the defendant appealed.

For the appellant there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *E. H. Bottum.*

For the respondent there was a brief by *Jared Thompson, H. M. Sheets,* and *Herbert J. Piper,* and oral argument by *Mr. Piper* and *Mr. Sheets.*

VINJE, J.   The evidence now presented is substantially the same as that before us upon the former appeal. See *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 138 N. W. 1016, 142 N. W. 122.   That being so, the questions then de-

cided are the law of the case now.   *Horn v. La Crosse B. Co.*
131 Wis. 384, 111 N. W. 522, and cases cited; *Schenck v.
Sterling E. & C. Co.* 155 Wis. 219, 144 N. W. 290, and cases
cited.   It was held upon the first appeal that the questions of
plaintiff's contributory negligence and assumption of risk
and of the proper construction and operation of the hoist and
of defendant's duty to warn plaintiff were proper jury ques-
tions.   The jury have now answered all of these questions
favorably to the plaintiff.   Upon the first trial there was a
conflict between the answers to questions 5, 6, and 7 relating
to plaintiff's assumption of risk and defendant's duty to
warn, and hence the verdict would not support a judgment in
favor of either party.   The present verdict is consistent
throughout and sustains the judgment entered.

Upon the former appeal the defendant argued that the
hoist was so palpably unsafe to the knowledge of the plaintiff
that he must be held as a matter of law to have assumed the
risk.   It now argues that the hoist was apparently so safe
that there was no duty on its part to warn the plaintiff or to
construct or operate it in any other manner, and that the ac-
cident occurred by reason of an unexpected operation of the
hoist, owing to the fact that the men ran to the south eighteen
or twenty feet and so threw more weight onto the south leg
of the hoist and caused it to topple over; that had the men
stood under the hoist and pulled directly down the hoist
would have remained firm.   It may be conceded that had the
men so pulled the hoist would have remained as placed.   But
since it was more or less dangerous for men to stand under
timbers weighing from 300 to 400 pounds while they were
hoisted forty-three feet in height, and since it required from
four to six men to hoist such a load, the jury would be war-
ranted in finding that a hoist constructed to be so operated
was not a safe one.   They would also be justified in coming
to the conclusion that it would be practically impossible for
six or more men to take hold of a rope so as to pull directly

down with a hoist constructed as this was; that it ought to have had a sheave block at the bottom substantially under the top one for the rope to pass through, so the men could stand out from under the timbers hoisted and still exert a perpendicular pull, and that, not having such a sheave block, defendant ought to have foreseen that the hoist would be likely to be operated as it was at the time of the accident. The jury no doubt reached the conclusion evidenced by the verdict from the fact that the hoist as constructed, in view of the load it had to carry, could not be safely operated and therefore did not measure up to the requirements of sec. 1636—81, Stats. 1911. This question was also practically decided on the former appeal, for it appeared in the evidence then as now that the men went to the south as stated, and it was then as now argued in defendant's brief that it was the negligence of plaintiff's fellow-servants and not the defendant's negligence that was the proximate cause of the injury. But the court did not interfere with the answer to the first question of the verdict then rendered which found the hoist unsafe. Upon the rehearing the correct dimensions of the planks upon which the hoist rested were considered by the court. So the question as to the safety of the hoist and its manner of operation is really foreclosed by the former decision. In any event we are satisfied that each finding of the jury is supported by the evidence.

Some exceptions are taken to the exclusion of evidence and to the charge to the jury. Both are without merit.

*By the Court.*—Judgment affirmed.