JAHN, Respondent, vs. NORTHWESTERN LITHOGRAPHING
COMPANY, Appellant.

*April 10—May 1, 1914.*

*Master and servant: Injury: Unsafe working place: Proximate cause:*
*Contributory negligence: Questions for jury: Special verdict:*
*Form: Harmless errors: Excessive damages.*

1. Plaintiff, the engineer in charge of a gas engine, was injured by
   a back-fire as he stood or was passing about four feet from the
   open end of the air intake pipe which had been temporarily
   lowered to about the level of his head while a new gas producer
   was being tested. Upon the evidence it is *held* that it was for
   the jury to say whether defendant failed to perform the duties
   imposed by sec. 2394—48, Stats. 1911, as to safety of the work-
   ing place, whether such failure proximately caused the injury,
   and (the defense of assumption of risk having been abolished)
   whether plaintiff was guilty of any affirmative act constituting
   contributory negligence.
2. Error, if any, in that a question in the special verdict assumed
   that defendant permitted the intake pipe to remain temporarily
   where it was, was not prejudicial, it being undisputed that de-
   fendant permitted plaintiff to work about the open pipe in vio-
   lation of said sec. 2394—48, and the jury having found that this
   fact proximately caused the injury.
3. An award of $2,500 for serious injury to the eyes of a stationary
   engineer is *held* not excessive.

APPEAL from a judgment of the circuit court for Milwau-
kee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action for personal injuries received by plaintiff while in
defendant's employ, November 18, 1911. The plaintiff was
a stationary engineer and had been for some years in charge
of the gas engine used in the appellant's lithographing estab-
lishment, which was operated by gas from the city gas mains.
Prior to the day of the accident the Luick-Bassett Company
had· been installing, under contract with the defendant, a
gas-producer outfit in the works, which was expected to pro-
duce from coal the necessary gas to run the engine. The air
intake pipe of the engine (a horizontal pipe four inches in

diameter) had always been about eighteen inches above the head of an average man in the engine room. This pipe is the pipe through which air is taken for the purpose of making the proper mixture of gas and air. When the gas producer had been installed and it became necessary to connect it with the engine and test the capability of the producer (which operation was a part of the duty of the Luick-Bassett Company), the employees of that company lowered this pipe about eighteen inches. This lowering was done during the noon hour of the day of the accident. The intention was to run the end of this pipe outdoors when it was demonstrated that the producer would furnish gas for the successful operation of the engine. It was plaintiff's duty to be present when the test was being made for the purpose of starting the engine when the contractors wanted it started. When the plaintiff came to work in the afternoon he noticed the change in the intake pipe, and testifies that he spoke to the defendant's manager about it and said that it was in a dangerous position, and that the manager told him that the pipe was only temporarily there during the test, and after the test would be extended outdoors. The danger consisted in the possibility that the engine might back-fire, in which case gas and flame would be expelled from the pipe so violently as to seriously injure any one whose head happened to be in front of the pipe. The plaintiff knew that back-firing sometimes happened and was conscious of the danger. His testimony that he told the manager of the danger is denied by the manager and by other witnesses. After the starting of the engine plaintiff noticed that the cover on the mixing valve was jumping up and down and knew that this would probably cause an imperfect mixture of gas and air and was likely to result in back-firing. The plaintiff testified that after the engine started he started to go to the switchboard to put on the main switch from the dynamo and that the manager spoke to him and asked him to throw some more load on the engine; that

he stopped when the manager spoke to him and stood for a moment or two talking to the manager, his head being about four feet in front of the open intake pipe when the back-fire occurred, seriously injuring his eyes. The manager denied that he stopped the plaintiff or spoke to him before the injury. In any event it is undisputed that the engine back-fired as the plaintiff was passing the pipe and that the injury resulted therefrom.

The jury returned a special verdict as follows:

"(1) Did the defendant company on November 18, 1911, negligently cause a sudden and unexpected back-fire from the intake pipe? A. No.

"(2) Was the plaintiff required, in obedience to any orders of the defendant, to be opposite to the intake pipe at the time he was injured? A. Yes.

"(3) Did the defendant, the *Northwestern Lithographing Company,* fail to exercise ordinary care in permitting the Luick & Bassett Producer Company to continue temporarily the location and termination of the air intake pipe at the place where it was located and terminated at the time of the plaintiff's injury? A. Yes.

"(4) If you answer the third question 'No,' you need not answer this question; otherwise answer this question: Was such failure to exercise ordinary care on the part of the *Northwestern Lithographing Company* the proximate cause of the injury sustained by the plaintiff, *William Jahn?* A. Yes.

"(5) Did any want of ordinary care on the plaintiff's part contribute in any degree to produce the injury? A. No.

"(6) If the court should be of the opinion that the plaintiff, *Jahn,* is entitled to recover in this action, what sum will reasonably compensate him for his injuries? A. $2,500."

From judgment for the plaintiff on this verdict the defendant appeals.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Rubin & Zabel,* and oral argument by *W. C. Zabel.*

WINSLOW, C. J.    The appellant claims that a verdict for the defendant should have been directed because (1) there is no evidence that defendant failed to furnish plaintiff a reasonably safe place to work, or that such failure proximately caused the injury; (2) the plaintiff was guilty of contributory negligence as matter of law.    These contentions will be briefly considered.

1. It is admitted that it was plaintiff's duty to be present to operate the engine at the time of the accident.    Under sec. 2394—48, Stats. 1911, the defendant was required to furnish the plaintiff a safe place of employment and also not to permit or suffer him to go or be in any employment or place of employment which was not safe.    Whether the defendant failed in the performance of these duties, and, if so, whether such failure was the proximate cause of the plaintiff's injury, were clearly questions for the jury.

2. Probably, under his own evidence, the plaintiff assumed the risk of the back-firing of the engine, because he knew of the change in the pipe and called the attention of his superior to the fact, but this defense was abolished by sec. 2394—1, Stats. 1911, and it does not appear as matter of law that the plaintiff was guilty of any affirmative act which could properly be called contributory negligence.    Whether he was so guilty was properly a jury question.

3. The appellant objects to the form of the third question because it assumes without proof that the defendant company permitted the intake pipe to remain temporarily where it was. It is undisputed, however, that the defendant permitted the plaintiff to work about the open pipe in violation of the statutory provision hereinbefore cited, and it is found by the answer to the fourth question in effect that this fact proximately caused the plaintiff's injury, hence the error, if any, was not prejudicial.

4. We do not regard the claim that the damages are excessive as well founded.

*By the Court.*—Judgment affirmed.