Besnys, Appellant, vs. Herman Zohrlaut Leather Company, Respondent.

*April 10—May 1, 1914.*

*Master and servant: Injury from unsafe machinery: Insufficient guard: Contributory negligence: Methods permitted by employer: Questions for jury.*

1. The duty imposed upon an employer by sec. 1636*j* and secs. 2394—41 to 2394—71, Stats. 1911, is that the place and the method of carrying on the business in which he is engaged shall be as safe as the nature thereof will reasonably permit as regards safety devices and safeguards, reasonably adequate methods and processes, and any other thing reasonably necessary to protect the life, health, safety, and welfare of the employee, and not to require, permit, or suffer an employee to go or be in any employment or place of employment which is not as safe as the nature of the employment will reasonably permit.

2. Where an employee in a tannery, working at an unhairing machine, lost his hand as the result of reaching over a wire guard

or lattice attached to the machine and extending from ten to fourteen inches above the hide, for the purpose of adjusting the hide on the bolster, thereby bringing his hand in contact with a revolving knife cylinder, and it was stipulated upon the trial that such machine might have had an additional guard of chicken wire so attached that a person could not reach over and put his hand within the danger zone, it could not be held as a matter of law that the employer had complied with all his statutory duties.

3. The defense of contributory negligence, though afterwards taken away, was available to an employer under secs. 2394—41 to 2394—71, Stats. 1911.

4. The penalty imposed by sec. 2394—70, Stats. 1911, upon any person who should violate the provisions of, or do any of the acts prohibited in, secs. 2394—41 to 2394—71, was in the nature of a forfeiture, the purpose of which was merely to enforce compliance with the statute, and, although it was to be paid into the state treasury, did not make the acts criminal in their character and did not preclude the defense of contributory negligence in actions for personal injuries based upon noncompliance with the statute.

5. The legislative purpose expressed in secs. 2394—48, 2394—49, Stats. 1911, was to impose upon the employer a liability for all injuries resulting from the hazards, risks, and dangers incident to the methods, processes, and conditions of the business furnished, permitted, or suffered by him, however obvious or open such hazards, risks, and dangers might be to the employee.

6. Since the evidence in this case permitted the inference that plaintiff pursued the customary method and process of operating the machine at which he was working, when he reached over the guard to adjust the hide on the bolster, it could not be held as matter of law that he was guilty of contributory negligence.

BARNES, J., and WINSLOW, C. J., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

This is an appeal from a judgment of nonsuit. The plaintiff brought this action to recover damages for the injuries he sustained [on October 2, 1911] from the loss of a part of his left arm, in consequence of coming in contact with the knives on the cylinder of a Leidgen unhairing machine which he was operating in the defendant's tannery. This is a power-driven machine having a revolving knife cylinder

about eight inches in diameter which travels backward and forward over the hide, which is placed over a rubber bolster or plat. It is operated by a lever in control of the person employed to operate it to remove the hair from hides in conducting the tannery business. The hide is thrown on the rubber bolster, which slants downward at an angle of forty-five degrees, and is about five feet wide, fastened at the top to a wooden beam by a cleat and at the bottom to a board, and kept in tension by counter weights. The knife cylinder is carried by an arm at each end, to which is attached the mechanism which causes it to operate. It has a range of motion from a point about four feet above the top of the bolster and along the course of the bolster to the bottom.

The guarding device on the machine at the time of this accident consisted of a wooden piece two by six inches, which reached across the beam of the bolster at the upper end. To this was attached a wire lattice which ran to a wooden crosspiece one by two inches. This formed the upper edge of the guard. The three parts made the guard from ten to fourteen inches above the hide, which rested on the upper end of the bolster. The hides were spread on the bolster when the knife cylinder and clamp and guard were raised to their highest and a stationary point. After the hides had been so placed, the operator by means of a lever brought the clamp and guard and knife cylinder down to the upper end of the bolster, thereby clamping the hides to the bolster and starting the knife cylinder to revolving and to removing the hair. The knife cylinder revolved rapidly, scraping the hair from the hide as it moved down the bolster. The operator, by means of a lever which extended through the frame at the back of the bolster and under the guard, controlled the up and down movements of the knife cylinder on the hide for the purpose of removing whatever hair remained on part of the hide on the bolster after the knife cylinder had passed over it.

It appears that the plaintiff was employed as an operator

of this machine; that he had worked running this kind of a machine for a year in Red Wing, Minnesota; and that he fully understood its operation and how to run it. He had worked on this machine for the defendant for five weeks before the day of this accident. On the day of the accident, after having been at work for two hours in the morning unhairing hides, and while engaged in the operation of unhairing a hide on the bolster, he proceeded to put a part of the hide onto the bolster, from which the hair had not been removed, so as to place these parts within the area of the running knife cylinder, by reaching over the guard and pulling the hide into place for this purpose. In his description of this process he testifies that he had his right hand on the lever controlling the knife cylinder and his left hand resting on the upper cross-piece of the guard; that he observed a part of the hide was beyond the course of the knife cylinder and needed to be put within the field of its operation; that he reached over the guard to pull it up on the bolster so that the knives could act on the parts of the hide from which the hair had not been removed; that when he grasped the hide to pull it up, the knife cylinder was on the lower part of the bolster; that it started towards the top and caught the mitten on his left hand and drew his hand into contact with the revolving knives and cut it so as to necessitate amputation.

Upon the plaintiff's evidence the trial court held that: "In this case there is no testimony tending to explain or excuse, as a matter of law, the act of the plaintiff in deliberately putting his left hand into the zone of danger. His conduct in that regard constitutes a want of ordinary care proximately contributing to his injury."

The court awarded judgment dismissing the plaintiff's complaint.

For the appellant there was a brief by *Rubin & Zabel,* attorneys, and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. Walmsley.* They argued, among other things,

that inattention, forgetfulness, absent-mindedness, indiffer-
ence, inadvertence, failure to recollect, and the like, being
universal weaknesses, common in a great measure to the mass
of mankind, are never, as a matter of law, contributory neg-
ligence; but merely make in each particular case a question
of contributory negligence for the jury. *Kane v. N. C. R.
Co.* 128 U. S. 91, 9 Sup. Ct. 16, 32 L. ed. 339; *West v. Eau
Claire,* 89 Wis. 31, 36, 61 N. W. 313; *Murphy v. Herold Co.*
137 Wis. 609, 615, 119 N. W. 294; *Wheeler v. Westport,* 30
Wis. 392, 394; *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583,
599; *Doan v. Willow Springs,* 101 Wis. 112, 116, 76 N. W.
1104; *Brinilson v. C. & N. W. R. Co.* 144 Wis. 614, 619, 129
N. W. 664; *Moyer v. Oshkosh,* 151 Wis. 586, 598, 139 N. W.
378; *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273, 276, 58
N. W. 408; *Klatt v. N. C. Foster L. Co.* 92 Wis. 622, 623,
66 N. W. 791; *S. C.* 97 Wis. 641, 73 N. W. 563. There
was in this case an element of haste or being "kept on the
jump," which is an additional circumstance to be given
weight by a jury on the question of contributory negligence.
*West v. Bayfield M. Co.* 144 Wis. 106, 112, 128 N. W. 992;
*Hanson v. N. P. R. Co.* 108 Minn. 94, 121 N. W. 607; *Tay
v. W. & S. F. R. Co.* 100 Minn. 131, 110 N. W. 433; *Kreuzer
v. G. N. R. Co.* 83 Minn. 385, 86 N. W. 413, 414; *Ander-
son v. G. N. R. Co.* 74 Minn. 432, 77 N. W. 240; *Larson v.
Johnson,* 72 Minn. 441, 75 N. W. 699; *Blomquist v. G. N.
R. Co.* 65 Minn. 69, 67 N. W. 804.

For the respondent there was a brief by *Williams & Stern,*
and oral argument by *Burdette Williams.* They contended,
*inter alia,* that plaintiff's duties did not take him within the
danger zone, but he went out of his way to do a perilous thing
in an unnecessarily and obviously dangerous way, hence there
was no violation of statutory duty by the master, but plaintiff
was guilty of contributory negligence. They cited *Powalske
v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Samulski
v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142; *Rosholt v.*

*Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066; *Houg v. Girard L. Co.* 144 Wis. 337, 129 N. W. 633; *Gulland v. Northern C. & D. Co.* 147 Wis. 391, 132 N. W. 755; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 130 N. W. 513; *Dixon v. Russell,* 156 Wis. 161, 145 N. W. 761; *Blahnik v. Central C. Co.* 142 Wis. 167, 125 N. W. 317; *Montevilla v. Northern F. Co.* 153 Wis. 292, 141 N. W. 279; *Strosin v. Wis. River P. & P. Co.* 153 Wis. 409, 141 N. W. 243; *Thompson v. American W. P. Co.* 143 Wis. 598, 128 N. W. 277; *Goodrich v. Chippewa Valley E. R. Co.* 108 Wis. 329, 84 N. W. 419; *Writt v. Girard L. Co.* 91 Wis. 496, 65 N. W. 173; *Chicago G. W. R. Co. v. Crotty,* 141 Fed. 913.

SIEBECKER, J. The case presents for consideration to this court the questions: 1st. Does the evidence present a case wherein the defendant required or permitted or suffered the plaintiff to go or be in an employment or place of employment which was not safe by reason of failing "to furnish, provide and use safety devices and safeguards and to use such methods and processes reasonably adequate to render such employment and place of employment safe," and "do every other thing reasonably necessary to protect the life, health, safety or welfare" of the plaintiff? Secs. 2394—48, 2394—49. 2d. If the defendant failed in its duty toward the plaintiff imposed on it by law, then can it avail itself of the defense of contributory negligence? And 3d. Do the facts and circumstances shown by the evidence establish that the plaintiff was guilty of contributory negligence as a matter of law as determined by the trial court?

It is contended by the defendant that the judgment of dismissal of the plaintiff's complaint can be sustained upon the ground that the evidence does not show that the defendant failed to perform any legal duty it owed the plaintiff under

either the provisions of sec. 1636$j$ or secs. 2394—41 to 2394—71 inclusive, or under all of these statutes taken together.

It is argued that the guard provided, as described in the foregoing statement, was in compliance with the demands of these statutes, and hence no default of the defendant exists in this regard. Treating the case as within the foregoing statutes, it is manifest the duty imposed on the defendant is that the place and the method of carrying on the process of manufacture in which the defendant is engaged shall be as safe as the nature thereof will reasonably permit as regards safety devices and safeguards, reasonably adequate methods and processes, and any other thing reasonably necessary to protect the life, health, safety, and welfare of the employee; nor shall the employer require, permit, or suffer an employee to go or be in any employment or place of employment which is not as safe as the nature thereof will reasonably permit. *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Langos v. Menasha P. Co.* 156 Wis. 418, 145 N. W. 1081. Considering this case in the light of these duties, can it be said as a matter of law that the defendant performed its duties in these respects as imposed by the statutes? Does it appear that the defendant furnished a guard and safety attachment to this machine which met the requirements of the law? We find stipulated facts in the case to the effect that "the machine on which the accident occurred might have had a guard of chicken wire placed across the arm which carries the gate or fastener, as it is called, so that a person could not reach over that gate and put his hand down onto the rubber plat while the gate or fastener was down, clamping the hide in position for work, and that he could not put his arm over the gate in such a manner as to get it in contact with the knife cylinder if there had been wire across the top. . . ." This tends to show pretty clearly that the guard provided was not as safe as the nature of the employment would reasonably permit. It is manifest that the

court could not properly hold as a matter of law that the defendant had complied with all its legal duties imposed by the statutes.    The language used in the case of *Willette v. Rhinelander P. Co.* 145 Wis. 537, 554, 130 N. W. 853, in speaking of similar statutory duties imposed by sec. 1636*j*, Stats., applies to the situation presented here:

"The intent of the statute is that if an employer maintains a situation within it, which as an ordinarily prudent man he ought reasonably to apprehend may cause a personal injury to any of his employees in the discharge of his duty, he must hold himself responsible for the consequences proximately produced thereby to any such employee without his contributory negligence. . . . It is no defense or excuse as regards civil remedies that it is not practicable to guard against the danger or to efficiently do so without some particular instrumentality, as in this case a ladder."

It is contended by the plaintiff that the court erred in holding that the defense of contributory negligence is available under secs. 2394—41 to 2394—71, regulating the rights of the parties to this action. The original provisions of sec. 2394—1, embodied in ch. 50, Laws of 1911, abolished the defense of assumption of the risk and also that of negligence of fellow-servants where four or more servants were employed in a common employment, in all actions to recover damages for personal injury sustained by an employee while engaged in the line of his duty.    Under this statute the defense of contributory negligence has been held open to employers in the courts without being questioned by the parties in many actions governed by the provisions of these chapters which provide for workmen's compensation, an industrial commission, and for safe conditions of employment.    It is also significant that the legislature, in the next following session, amended these statutes by expressly enacting that it shall not be a defense in actions within the scope of the statute "that the injury or death was caused in whole or in part by the want of ordinary care of the injured employee, where such want of ordinary care was not

wilful." It is manifest from this legislative action that the legislature considered this defense was available to the employer under the original act. But it is argued that the penalty features of the act make this defense unavailable upon the ground that the omission of any duty imposed thereby is declared an offense in the law. An examination of the provisions of the act discloses that a penalty is imposed by sec. 2394—70. It provides that every employer, employee, or other person who shall violate any of the provisions or do any act prohibited in secs. 2394—41 to 2394—71, inclusive, or fail in any duty lawfully enjoined, or neglect or refuse to obey an order by the commission or any judgment of a court rendered in connection therewith, shall "for each such violation, failure or refusal, . . . forfeit and pay into the state treasury a sum not less than ten dollars nor more than one hundred dollars for each such offense." Tested by context, subject matter, and object of the provisions of the statute, it is apparent that the regulations deal wholly with the civil rights of the persons embraced within its scope and pertain to the right of recovery for an injury occasioned by negligence or wilful omission to perform the duties enjoined between employer and employee. The forfeitures provided are not a substitute for the liabilities to the injured persons by the party in default; they are imposed by way of coercion to enforce performance of the duties imposed by the statute. True, the penalty is to be paid into the state treasury; yet this in itself does not make the acts upon which the penalty follows within the field of criminal conduct nor of the nature of those involved in the cases of *Pizzo v. Wiemann,* 149 Wis. 235, 134 N. W. 899, and *Pinoza v. Northern C. Co.* 152 Wis. 473, 140 N. W. 84. These cases go upon the principle that "When the violation of a statute designed to protect persons against bodily injuries is made a criminal offense, such violations should be classed with gross negligence," and the guilty person held liable for injuries to others, regardless of the contributory neg-

ligence of the person injured. In the opinion of the court it is stated that the prohibited acts on which liability rested in these cases were of "such grave and serious nature that the legislature declared them to be criminal and subjected the violator to fine and imprisonment, and that the guilty person must be held to have acted wilfully, and hence could not claim exemption from civil liability in damages by reason of any contributory negligence of the injured person." The acts for which a forfeiture are prescribed in the statute here under consideration are not declared criminal nor is a guilty party subject to criminal prosecution. Many of the forfeitures pertain to failure to obey orders of the commission and judgments of courts in civil proceedings. We are persuaded that the legislature did not intend to declare a breach of the duties imposed under these statutes to be a crime and thus make a failure to comply therewith a wilful act in the law, but that the forfeiture imposed was to coerce performance of these duties, and in case of a failure in this respect the guilty person was liable in a civil action for its recovery under sec. 2394—1 *et seq.,* Stats. The legislative intent to leave the defense of contributory negligence open to defendants in actions brought under the original statute is sufficiently clear, and we must so hold. The following cases bear on the question: *Curry v. C. & N. W. R. Co.* 43 Wis. 665; *Holum v. C., M. & St. P. R. Co.* 80 Wis. 299, 50 N. W. 99; *Thompson v. Edward P. Allis Co.* 89 Wis. 523, 62 N. W. 527.

The remaining question is, Did the court err in holding that under the evidence the plaintiff was, as a matter of law, guilty of contributory negligence? A description of the unhairing machine and its method of operation is given in the foregoing statement. It appears that the plaintiff as operator stood near the upper end of the bolster, where the clamp fastened down over the hide on the bolster, with his right hand on the lever which controlled the up and down movements of the knife cylinder, and his left hand on the upper cross-piece of the

guard, which was from ten to fourteen inches above the hide and came to a point even with his chest,—as stated, "to the second button from the top of his vest." When the cylinder and guard were down, the operator was required to send the knife cylinder up and down the hide to remove the hair. It is urged in support of the trial court's ruling that the evidence shows there was no occasion for the plaintiff to put his hand over the guard or to take hold of any portion of the hide. An examination of the plaintiff's testimony discloses that when he reached over the guard and took hold of the hide, the hair from parts of it had not been removed, and he pulled the hide to put these parts on the bolster; that the cylinder was then revolving near the lower part of the bolster. He also states that he did this because it was customary to do it; that he was so instructed by another workman who likewise operated a machine near him, and that this was done to expedite the work. The trial court evidently concluded that the danger was an obvious one and hence the plaintiff was guilty of affirmative negligence which co-operated with the dangerous condition to injure him. Secs. 2394—48 and 2394—49 clearly impose the duty on the employer to make the place of employment as safe as the nature thereof will reasonably permit, and it also provides that he shall not permit, require, or suffer an employee to go or be in an unsafe employment, and that the methods and processes shall be reasonably adequate to render the place of employment safe. If the jury, upon plaintiff's testimony, believed that the plaintiff was operating the machine and performing his duties in a manner which conformed with the usual and customary method and process of conducting the defendant's business, then the plaintiff was performing his duties in the customary way and was following the methods and processes which his employer directed, permitted, or suffered in conducting its business. If the evidence permitted of this inference, the question is, Was the danger and hazard to which the plaintiff was subjected at the time of the

injury one created by him through his negligent acts, or was the danger and hazard one incident to the method and process of conducting this business? In answering this question the purpose of the enactments must be consulted. It is manifest from their context that the legislature intended that employers should be liable for all injuries resulting to employees from unsafety in employment as regards to places, safety devices, and safeguards, and to methods and processes of conducting their business. The clear implications are that the risks and hazards of an employment resulting from the failure of the master to comply with these requirements are risks and hazards incident to the employee's duties, though they may be of an obvious nature. The legislature had a right to take into consideration that employees, under the stress and condition of existing industrial life, had but little choice to refuse the employment offered them under such conditions of danger as the employers saw fit to adopt, and deemed it good policy to impose the burden of all the risks and hazards attending such business methods and processes on the employer, though they were open and obvious to an employee in the course of his employment. In harmony with this purpose, the statute inhibits employers from requiring, permitting, or suffering employees to work under conditions of unsafety denounced by its provisions, and also declares that "no such employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employees and frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe." Sec. 2394—49. We are led to the conclusion that the legislative purpose expressed by these enactments is that the consequent injuries from all hazards, risks, and dangers incident to the method, process, and conditions of the business furnished, permitted, or suffered by an employer, however obvious and open the hazards, risks, and dangers may be to the employee, are to be borne by the employer, and shall

not defeat a recovery of damages for an injury to an employee engaged in the line of his duty or for death resulting from such an injury. An application of these statutes to the instant case presents the inquiry, Did the plaintiff, while engaged in the line of his duty, perform the service of operating the unhairing machine in a way that the employer required, permitted, or suffered in the method, process, or condition of safety in the conduct of its business? As we have heretofore suggested, the plaintiff's evidence permitted of the inference that he pursued the customary method and process of operating the machine when he reached over the guard to adjust the hide on the bolster, and while so engaged his hand was caught in the knife cylinder and severely injured. From the view as we comprehend the case, it was error to hold that the plaintiff was guilty of contributory negligence as a matter of law. The evidence upon these issues presented a case for the jury.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court for a new trial.

WINSLOW, C. J., dissents.

BARNES, J. (*dissenting*). There is much to be said in support of the contention that the defense of contributory negligence was abolished by ch. 485, Laws of 1911. The court decides otherwise, and I am not disposed to dissent from that proposition.

I think the plaintiff was guilty of contributory negligence. It was shown without dispute (1) that there was a perfectly safe way to do the work which plaintiff was doing when injured; (2) that it was well known to him and could be followed without effort or loss of time; and (3) that he chose an obviously dangerous method. This I think constituted contributory negligence as distinguished from assumption of hazard. I do not see how the failure of duty on the part of the defendant affects the question. That goes to its negligence,

not to the contributory negligence of the plaintiff.    It seems
to me that the logical effect of the decision is to abolish the
defense of contributory negligence in fact though not in form
in practically all cases where assumption of hazard is no longer
a defense.