FANDEK, Executor, Respondent, vs. BARNETT & RECORD COMPANY and another, Appellants.

*January 14—May 18, 1915.*

*Master and servant: Injuries: Defenses: Statutes: Assumption of risk and contributory negligence distinguished: Duty of employees: Questions for jury: Form of special verdict.*

1. The correct practice is to submit for special verdict only one question on the subject of plaintiff's contributory negligence; but the submission of two questions partly covering the field and one wholly covering it, where the answers are consistent, was not a prejudicial error.
2. Contributory negligence is established when it is shown that plaintiff failed to take such precautions for his own safety as a person of ordinary care and prudence would usually take under the same or similar circumstances.

3. The defense of assumption of risk which was abolished by sub. (1), sec. 2394—1, Stats. 1911, in actions for personal injuries to employees, relates to such risks as could be assumed within the field of ordinary care; but if an employee, either knowingly or ignorantly through a want of ordinary care, serves under a risk when the imminence of serious injury therefrom is so great that an ordinarily careful and prudent man similarly situated would not usually serve under it, his conduct is contributory negligence, and the defense based thereon remained available to the employer under the statute of 1911, although afterwards abolished in certain cases by par. (3), sub. 1, sec. 2394—1, Stats. 1913. *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, explained and limited.

4. The abolition of the defense of assumption of risk does not absolve the employee from the duty of exercising ordinary care for his safety; and whenever his failure to do that causes his injury in whole or in part he is guilty of contributory negligence, irrespective of whether the negligence consists in an omission to discover a danger that ought to be discovered and shunned, or in a careless or bungling manner of doing an act otherwise reasonably safe, or in voluntarily assuming a risk that an ordinarily careful and prudent man similarly situated would not usually assume.

5. No sharp distinction always exists between contributory negligence and mere assumption of risk, and it is in most cases for the jury to say whether the conduct in question is one or the other.

6. Large, heavy steel spouts from an ore dock had been unloaded from cars and piled in tiers of three, timbers being laid across or at an angle in the lower spouts to support the upper ones and to prevent them from nesting together. In the performance of his duty one of the unloading crew proceeded to remove various plates, burrs, and washers which had been left in the spouts. After removing them from the top spout of one tier he crawled into the middle spout and while removing a plate the top spout suddenly fell and crushed him. The top spout had been supported at one corner by the upper edge of the middle spout only. The jury found that deceased before climbing into the middle spout could by the exercise of ordinary care have learned the manner in which the top spout was then supported and have comprehended the danger of its falling upon him, and that a want of ordinary care on his part proximately contributed to his injury. *Held*, that the jury thereby found him guilty of contributory negligence and not of assumption of risk.

SIEBECKER and KERWIN, JJ., dissent. MARSHALL, J., dissents in part.

APPEAL from a judgment of the circuit court for Ashland county: G. N. RISJORD, Circuit Judge. *Reversed.*

Action for personal injury originally begun by Ernest Samida to recover damages for injuries sustained by him on January 21, 1913, while employed by the defendant in unloading and piling spouts belonging to an ore dock that was being repaired. On March 8, 1913, Samida died as a result of his injuries and the action was thereafter revived in the name of plaintiff as executor of the will of Samida.

The spouts which the deceased assisted in unloading were about thirty feet long, two feet deep, four feet wide at the smaller end, and eleven feet wide at the larger end. At the large end they were practically flat on the bottom and at the smaller end they were somewhat circular. Each spout weighed about two tons. On the under side there were, at intervals, ribs of steel about one-half inch thick and four inches wide set edgewise onto the spouts. These spouts were being removed from the dock and piled in the ore yard while repairs were being made on the dock. They were loaded onto flat cars at the dock in sets of two in height with timbers placed across the ends or laid in the spout at an angle from the side to prevent them from nesting together. Various plates, burrs, and washers that were used in attaching them to the dock were left in them. In the ore yard four spouts were first laid upon the ground side by side and adjacent to the track. Then by means of skids and block and tackle each set of two spouts was slid from the flat car onto the spouts already placed, so that a pile when completed consisted of four tiers each three spouts in height. After the spouts were piled and while waiting for the next car the crew were required to climb and crawl into the spouts and remove the plates, burrs, and washers left in them. The plates were about three feet by three and one-half feet and weighed about 150 pounds each.

Just before the dinner hour on January 21, 1913, the crew

had completed three of these tiers, and the tenth spout was on the ground ready for two more spouts to be placed, completing the pile. The top spout in the tier last placed was supported by a timber across the small end. At the large end there was a 4 x 4 inch timber set diagonally in the spout on the left-hand side when looking toward the small end, and on the other side the spout rested on the one below, the point of contact being the first rib at about one or one and one-half inches from where the rib turned up the side of the spout.

Upon returning from dinner Samida removed the plates and washers from the first two tiers, and then climbed into the top spout last placed and removed the plates, burrs, and washers and then crawled into the middle spout of the same tier. He had removed one plate and was pushing on the second when his partner, Becker, came along and asked if he wanted help. Becker took hold of the front end of the plate and was pulling when the upper spout fell and crushed Samida.

The jury found (1) that the spout that injured Samida was not so supported at the time of the injury as to give reasonable protection to the life and limb of a person employed as Samida was at the time of the accident; (2) that such failure to have the spout so supported was the proximate cause of the injuries to the deceased; (3) that the defendants in the exercise of ordinary care ought to have anticipated before the injury occurred that the spout was not so supported as to give reasonable protection to the life and limb of a person engaged as deceased was at the time of the injury; (4) that the deceased before climbing into the spout in which he was injured could by the exercise of ordinary care have learned the manner in which the top spout was then supported; (5) that the deceased before climbing into the spout in which he was injured could by the exercise of ordinary care have comprehended the danger of the spout falling upon him; (6) that a want of ordinary care on the part of Samida proximately con-

tributed to his injuries; (7) that the defendants did not furnish Samida, at the time he was injured, a place of employment in which to perform his duties as free from danger to life, health, and safety of the employees engaged in the employment that Samida was at the time of the injury as the nature of the employment reasonably permitted; (8) that the failure of defendants to furnish such place of employment was the proximate cause of the injuries to the deceased; and (9) damages $1,366.25.

The court changed the answer to question 6 from "Yes" to "No." Upon the verdict so changed judgment was entered for plaintiff and the defendants appealed.

For the appellants there was a brief by *Bundy & Wilcox,* and oral argument by *R. L. Wilcox.*

For the respondent the cause was submitted on the brief of *Holland & Lovett,* attorneys, and *W. Stanley Smith,* of counsel.

The following opinion was filed March 2, 1915:

VINJE, J. The trial court changed the answer to question 6 from "Yes" to "No" and exonerated the deceased from contributory negligence on the ground that his conduct did not amount to contributory negligence but to an assumption of risk only. In his opinion the judge says:

"The evidence in this case bearing upon the conduct of the deceased resolves itself into the question of whether going into the spout to get the plates out, knowing and appreciating as he did how the upper spout was being supported, was an act of negligence on his part contributing to his injury, or conduct which, except for the statute, would have constituted an assumption of risk."

We presume the latter part of the sentence means, conduct which, except for the statute, would have constituted the defense of assumption of risk, since obviously the statute could not abolish assumption of risk. It abolished the defense of

assumption of risk and left the defense of contributory negligence.   Sub. (1), sec. 2394—1, Stats. 1911.   By so doing the legislature clearly recognized that there was a distinction between assumption of risk and contributory negligence or it would not have abolished the defense as to one and not as to the other.   In 1913 the defense of contributory negligence was abolished as to employers having four or more employees engaged in a common employment at the time of the accident. Par. (3), sub. 1, sec. 2394—1, Stats. 1913.   The provision abolishing the defense of assumption of risk remains unchanged (see par. (1), sub. 1, sec. 2394—1, Stats. 1913), again showing that the legislature recognized the distinction between contributory negligence and assumption of risk. This court has frequently, and especially of late, had occasion to state in various phraseology the fact that assumption of risk and contributory negligence may co-exist, or one may be present and the other absent.   See *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633; *Dodge v. Kaufman,* 152 Wis. 171, 139 N. W. 741; *Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 138 N. W. 1016, 142 N. W. 122; *Murray v. Paine L. Co.* 155 Wis. 409, 144 N. W. 982; *Janiak v. Milwaukee Western F. Co.* 156 Wis. 544, 146 N. W. 788; *Jahn v. Northwestern L. Co.* 157 Wis. 195, 146 N. W. 1131.

By its answer to question 4 the jury found that by the exercise of ordinary care the deceased before climbing into the spout could have learned the manner in which the top spout was supported, and by its answer to question 5 it found that by the exercise of like care he could have comprehended the danger.   Both these questions relate to contributory negligence.   The claim of counsel for plaintiff that they relate to assumption of risk is unfounded, for the court as well as counsel clearly understood that assumption of risk was not a defense and that no questions on that branch of the case were needed or permissible.   The answers to the two questions became practically immaterial by reason of the fact that ques-

tion 6 itself covers the whole field of contributory negligence. They only serve to emphasize the fact that no matter in what form the issue of contributory negligence was presented the jury found against plaintiff.

The correct practice, however, is to submit only one question on the subject of plaintiff's contributory negligence, but the submission of two partly covering the field and one wholly so, where the answers are consistent, cannot be held prejudicial error.

Question 6 read, "Did any want of ordinary care on the part of Ernest Samida proximately contribute to produce his injuries?"   Relative to it the court charged the jury as follows:

"You are instructed that it was plaintiff's duty to exercise ordinary care for his own safety, and that the exercise of such care includes the fair use of one's faculties and opportunities of observation in order to learn and comprehend the dangers that are naturally incident to the situation.   The deceased, Ernest Samida, is chargeable with the knowledge of such danger as he might know or comprehend by the exercise of such ordinary care, and such as he could have discovered and ought to have discovered by the use of his sight and other senses in the exercise of such care.   You will carefully consider the evidence in this case bearing upon the inquiry as to whether Samida's own conduct at the time of the injury lacked the exercise of ordinary care,—that is, whether or not he himself was negligent in the manner in which he attempted to take the plates out of the chute, *and whether he was negligent in going into the chute at all to take the plates out under the conditions then surrounding him,* and whether he was negligent in any way that contributed proximately to produce his injury; and in considering this question you will also bear in mind the explanation and definition I gave you of the terms 'proximate' in connection with 'proximate cause.'

"You are instructed that knowledge by the deceased that the spout was not properly supported, if you find that to be a fact, and his continuance in the employment of the defendants up to the time of his injury, that such knowledge is not of it-

self evidence of a want of ordinary care on his part; but you will determine whether the deceased exercised ordinary care under the circumstances, under the instructions I have given you, in going into the spout in question at the time, in the light of the situation as it then was, and in the light of his duties to exercise ordinary care for his own safety, and answer this question 'Yes' or 'No' as you find the facts to be; and you are instructed that the burden is upon the defendants to satisfy you by a preponderance of the evidence that the deceased failed to exercise ordinary care,—that is, that your answer to this question should be 'Yes,' and you are instructed that if you are not so satisfied your answer to this question will be 'No.' "

The question is the usual one submitted upon the issue of contributory negligence, and the instructions relative to it are also such as are customarily given under similar circumstances. The jury is asked to measure the conduct of the deceased by that of an ordinarily careful and prudent man under the same or similar circumstances, and they are told that if it measures up to such conduct they must answer the question "No," otherwise "Yes." It is difficult to perceive how the jury could have regarded the question, under the charge given, as calling for the determination of any other fact than that of whether the conduct of the deceased at the time he was injured measured up to ordinary care. Indeed, the trial court does not change the answer to the question on the ground that the jury was misled in any way, but because the conduct of the deceased, as shown by the evidence, establishes as a matter of law assumption of risk and not contributory negligence.

The testimony on this branch of the case is practically undisputed. The evidence shows that when the crew went to dinner the top spout rested upon the one below it as described in the statement of facts and it was in the same position when they returned after dinner. The witness Zasada so testifies and it is not disputed. The deceased went to work and took out the plates and washers in the two tiers first piled and then

went into the top spout of the tier just completed before din-
ner and removed the plates and washers from it.   He then
climbed down and crawled into the one below it, and it was
while he was in the act of removing the plates and washers
from the second spout from the top that the upper one sud-
denly fell upon him.   It fell like a shot, the witnesses say,
without any grating noise as though slipping upon its bear-
ings.   The deceased, whose testimony was taken, says he did
not look at or examine how the upper spout was supported
before he crawled into the one below it, though he could have
easily done so had he taken just a glance at it, as it was rest-
ing about level with his eyes.

The workmen were here creating a place of employment by
the piling up of these spouts.   Its safety depended largely
upon the care exercised by them in doing their work.   It was
quite evident to any of them that a spout like the one in ques-
tion unless securely supported would constitute a deadly trap
for any one in the spout below, as the least jar or disturbance
might cause it to fall.   It was no doubt owing to this fact
that the jury found the deceased negligent in crawling into
the second spout without looking to see how the upper one
was supported—especially since he had just been up into it
and had taken plates and washers from it.   He testifies that
he did not jar it in so doing, neither did he do so when he was
in the one below and the upper one fell.   In this he is cor-
roborated by Becker, who worked with him at the time he
was injured.   He said neither he nor the deceased disturbed
the upper spout.   So the jury must have found that the upper
spout, at the time the deceased crawled under it, was so in-
securely supported that an ordinary inspection would have
disclosed the fact, and that being chargeable with the knowl-
edge of such fact it was negligence to crawl into the spout
below as the deceased did.

This brings us to the question whether contributory negli-
gence can consist in serving under a risk that is known to the

employee or which by the exercise of ordinary care he should have discovered, or whether such service is in all cases nothing more than an assumption of risk.

Contributory negligence is established when it is shown that plaintiff failed to take such precautions for his own safety as a person of ordinary care would usually take under the same or similar circumstances. It may take the form of an affirmative act or of a failure to act. It may consist in an act or in a failure to act that creates a new risk or that enhances or assumes an existing one. If plaintiff serves under hazards incident to the employment no greater than those which ordinarily careful and prudent men usually serve under, then injury from such hazard alone is through assumption of risk and not through contributory negligence. But if plaintiff knowingly or ignorantly through a want of ordinary care serves under a risk that an ordinarily careful and prudent man similarly situated would not usually serve under, then such conduct is contributory negligence and not assumption of risk. In other words, the assuming of such risks as ordinarily careful and prudent men similarly situated usually assume is within the field of assumption of risk whether assumed knowingly or ignorantly. But the assuming of such risks as are more hazardous than those which ordinarily careful and prudent men similarly situated usually assume constitutes contributory negligence. And it is immaterial whether the risk is assumed knowingly or ignorantly through a want of ordinary care. It was no doubt with this idea in mind that the supreme court of the United States in *Schlemmer v. B., R. & P. R. Co.* 205 U. S. 1, 12, 27 Sup. Ct. 407, speaking of assumption of risk and contributory negligence, said: "But the difference between the two is one of degree rather than of kind." In that case upon the second appeal (220 U. S. 590, 31 Sup. Ct. 561) it was held that the going in between cars by a brakeman to couple them was not so hazardous as to be *per se* contributory negligence; that

his going in was merely an assumption of risk; but the finding of the state court that plaintiff was guilty of contributory negligence in the manner in which he attempted to make the coupling after he was in between the cars was sustained. After defining assumption of risk and excepting therefrom "such obvious dangers that no ordinarily prudent person would incur them," the court says: "Contributory negligence, on the other hand, is the omission of the employee to use those precautions for his own safety which ordinary prudence requires." Page 596.

And in *Seaboard A. L. R. Co. v. Horton,* 233 U. S. 493, 504, 34 Sup. Ct. 635, it used this language:

"Contributory negligence involves the notion of some fault or breach of duty on the part of the employee, and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee."

As long as the employee was solely responsible for the results of an assumption of risk it was not necessary to distinguish between those cases in which he was defeated by assumption of risk and those in which contributory negligence. barred his recovery. With this idea in mind the court in *Knauer v. Joseph Schlitz B. Co.* 159 Wis. 7, 149 N. W. 494, speaking of assumption of risk, said:

"Being purely a voluntary act, it does not involve any violation of duty by the employee, for one is at liberty to subject himself to danger if he sees fit, and, if he does so, in the absence of some written law to the contrary, it is at his own risk."

But when the act of an employee who subjects himself to a hazard is at the expense of the employer, a duty upon his

part arises not to unnecessarily assume a risk so.great that an accident may reasonably be expected to follow. To do so is negligence, because it is failing to take that precaution for his own safety that ordinarily prudent employees usually take under similar circumstances.

The abolition of the defense of assumption of risk does not absolve the employee from the duty of exercising ordinary care for his own safety. And whenever his failure to do that causes his injury in whole or in part he is guilty of contributory negligence, irrespective of whether the negligence consists in an omission to discover a danger that ought to be discovered and shunned, or in a careless or bungling manner of doing an act otherwise reasonably safe, or in voluntarily assuming a risk that an ordinarily careful and prudent man similarly situated would not usually assume. Negligence exists when conduct does not measure up to the standard of ordinary care. The defense of assumption of risk abolished by the statute related to such risks as could be assumed within the field of ordinary care. When their assumption amounted to negligence the defense under the law in force when this injury occurred was available. There is no other rational line of demarcation.

Since ordinarily careful and prudent men usually serve under ordinary risks, it follows that in order to constitute contributory negligence the risk voluntarily served under must be more or less imminent or grave in its nature. It must be a hazard that suggests danger to such an extent that a person of ordinary care would not usually serve under it. *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136, 44 N. W. 752; *Erdman v. Ill. S. Co.* 95 Wis. 6, 69 N. W. 993. Nothing herein said conflicts with what was decided in *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 147 N. W. 37, where the court held that it was the legislative intent as expressed in secs. 2394—48, 2394—49, Stats. 1911, to impose upon the employer a liability for all injuries resulting from the haz-

ards incident to the methods, processes, and conditions of the business furnished, permitted, or suffered by him, however obvious such hazards might be to the employee. Obvious means "Easily discovered, seen, or understood; readily perceived by the eye or the intellect; evident; as, an obvious meaning; an obvious remark; an obvious defect." Webster, Internat. Dict. So obvious risks or dangers of an employment are those which are apparent in the exercise of ordinary observation and which are disclosed by the ordinary use of the eyes and other senses. 6 Words & Phrases, 4896 and cases cited. It is not the ease with which a hazard is discovered that tends to make serving under it a want of ordinary care, but the imminence of serious injury from it. And when such imminence of serious injury is so great that an ordinarily prudent man would not under the same or similar circumstances serve under it, the voluntary doing so constitutes contributory negligence. The question in the *Besnys Case* was whether the risk assumed was so great as to constitute contributory negligence as a matter of law. The majority of the court held that it was not. Our court has frequently spoken of assumption of risk as a species of contributory negligence, and so it is in many if not in all cases. As long as both were a complete defense no occasion arose for making a sharp distinction between them. Indeed, no sharp distinction always exists, for negligent and nonnegligent acts shade into each other and the judgment of men differs as to when they pass from one field into the other. So it is in most cases primarily a question for the jury to say in what field the questioned conduct lies, in that of a mere assumption of risk or in that of negligence, bearing in mind, however, that it may enter the latter field through the former as well as otherwise.

Under the evidence, the answer to the question submitted, and the instructions relative thereto, it must be held that the jury found the deceased guilty of contributory negligence

and not of assumption of risk, and that there is evidence to
sustain the finding. The trial court, therefore, erroneously
changed the answer to question 6 (numbered 7 in the verdict
rendered) from "Yes" to "No."

*By the Court.*—Judgment reversed, and cause remanded
with directions to reinstate the specified answer of the jury
and to enter judgment for defendant upon the verdict as ren-
dered.

SIEBECKER, J. (*dissenting*). I cannot concur in the de-
cision rendered by the court that Samida was guilty of con-
tributory negligence. It seems clear to me that the trial
court correctly held that he was free from contributory neg-
ligence under the facts and circumstances shown. The risk
and danger incident to the unsafe manner in which the spout
was placed by the members of the crew doing this work and
which the jury found proximately caused the injury was a
danger incident to the manner in which defendant conducted
its business at the place in which Samida was permitted to
work. Under the facts shown it was a risk he, as defend-
ant's employee, had the right to assume. To my mind there
is nothing in the evidence to warrant the inference that he
was guilty of negligence in performing his service under
this hazard incident to his employment. The court holds
that ". . . if plaintiff knowingly or ignorantly through a
want of ordinary care serves under a risk that an ordinarily
careful and prudent man similarly situated would not usu-
ally serve under, then such conduct is contributory negli-
gence and not assumption of risk." And: "But the assum-
ing of such risks as are more hazardous than those which or-
dinarily careful and prudent men similarly situated usually
assume constitutes contributory negligence." I think this
basis of the decision is contrary to the provision of sec.
2394–41, Stats. 1913, and subsequent sections defining the
liability of employers to employees while in their service and

as interpreted in the decisions of this court.    See *Rosholt v. Worden-Allen Co.* 155 Wis. 168, 144 N. W. 650; *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 147 N. W. 37; *Knauer v. Joseph Schlitz B. Co.* 159 Wis. 7, 149 N. W. 494.

In the *Besnys Case* the court declares:

"The legislature intended that employers should be liable for all injuries resulting to employees from unsafety in employment as regards to places, safety devices, and safeguards, and to methods and processes of conducting their business. The clear implications are that the risks and hazards of an employment resulting from a failure of the master to comply with these requirements are risks and hazards incident to the employee's duties, though they may be of an obvious nature."

*Van Dinter v. Worden-Allen Co.* 153 Wis. 533, 138 N. W. 1016, 142 N. W. 122; *Puza v. C. Hennecke Co.* 158 Wis. 482, 149 N. W. 223.

I think the rule followed in the instant case as above stated is at variance with the rule of the *Knauer* and other cases as to what constitutes assumption of risk and contributory negligence under these statutes.    Under the evidence the court, in my opinion, properly awarded judgment for the plaintiff.

KERWIN, J., dissents.

The following opinion was filed March 19, 1915:

MARSHALL, J. (*concurring*).    I concur in the decision upon the ground that, though the deceased assumed the risk of working under conditions which were more than ordinarily hazardous, he was guilty of contributory negligence in failing to exercise ordinary care to see whether the spouts were securely supported before going into the particular place where he was injured.    According to the statement of facts, the spouts were liable to be insecurely supported as deceased must have known.    The risk that they might be thus was the one he assumed.    That was within his contract.    It did not

absolve him from responsibility of paying reasonable heed to whether they were in such condition before going into the probable zone of danger. According to the statement, just a little attention to the matter would have disclosed the imminence of such danger. He paid no attention whatever thereto and so was guilty of contributory negligence.

The last part of the opinion of my brother VINJE, stating a distinction between contributory negligence and assumption of the risk under the statutory policy rendering the former still a matter of defense, but the latter not, I cannot agree to. I do not think it is supported by *Erdman v. Ill. S. Co.* 95 Wis. 6, 69 N. W. 993; *Schlemmer v. B., R. & P. R. Co.* 205 U. S. 1, 27 Sup. Ct. 407; or *Besnys v. Herman Zohrlaut L. Co.* 157 Wis. 203, 147 N. W. 37.

The first case cited distinctly treats voluntarily working under extrahazardous conditions as assumption of the risk, and the others recognize that there may be assumption of risk of a high degree and failure to exercise ordinary care under the special circumstances. The idea that the grade of danger is a test of whether the particular risk is assumed, or the act in working under the conditions or in the particular way, an inadvertence,—is a new one and I fear an illogical and dangerous one.

It is unfortunate that assumption of the risk, which, necessarily, does not involve inadvertence, was ever confused with contributory negligence, which, necessarily, must be characterized by inadvertence. It is still more unfortunate, in my view, that after distinctly and emphatically turning to the only logical distinction between the two situations in *Knauer v. Joseph Schlitz B. Co.* 159 Wis. 7, 149 N. W. 494, the new idea should be advanced. At present, it has the support of but a minority of the court. I have faith that, upon further consideration, the distinction mentioned in the *Knauer Case* will be affirmed as the only one and that it will also be reaffirmed, as in *Besnys v. Herman Zohrlaut L. Co.* and the

*Schlemmer Case,* that if one voluntarily consents to work in an extra and unnecessarily· hazardous place, he assumes the risk regardless of the grade of it, but if he then fails to exercise reasonable care, under the special circumstances, his conduct is not within the field of such risk but is within that of inadvertence. That does not inject any new and confusing idea into the law of negligence as regulated by the statute, while the idea that I feel compelled to dissent from, I think does.

A motion for a rehearing was denied, with $25 costs, on May 18, 1915.