FREI, Appellant, vs. FREI, Respondent.

*March 3—March 31, 1953.*

For the appellant there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Eli Block*.

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Harry F. Knipp,* all of Janesville.

FAIRCHILD, J. The plaintiff complained that while in the employ of the defendant he was engaged in using a corn-picking and husking machine which was defective, unsafe, and out of order "in that the gathering chains were so worn and defective that they could not be tightened sufficiently, thereby causing them to run loose, flop, and have considerable play. That on said day and before the injury sustained by the plaintiff . . . the plaintiff informed the defendant of the dangerous condition of said gathering chains and requested that the same be repaired and made safe by replacement with new chains, and the said defendant did then and there promise to replace said chains. . . ." The defendant answered, denying that he was negligent in the following respects: That he failed to replace the gathering chains with suitable and safe chains; that he allowed said machine to become defective, unsafe; that he failed to equip said machine with safety devices for the protection of plaintiff operating the machine in the discharge of his duties, contrary to and in violation of sec. 167.12 of the Wisconsin statutes.

With respect to defendant's liability arising from violation of sec. 167.12, Stats., that section provides:

"Any person, . . . who shall . . . use any machine to be operated by steam, or other power, for the purpose of husking or shredding corn or cornstalks shall provide such machine with safety or automatic-feeding devices for the protection from accident by the snapping rollers, husking rollers, and shredding knives of any person using or operating such machine in the discharge of their duty, and such machine shall be so guarded that the person feeding said machine shall be compelled to stand at a safe distance from the snapping rollers;

and . . . shall maintain thereon such safety or automatic-feeding devices. . . ."

Photographs of the corn picker and husking machine were attached to the affidavit of defendant in support of the motion for summary judgment, and from these it appears that the machine was not of the character or make-up to which sec. 167.12, Stats., would apply. We have given consideration to the provisions of that section, and we agree with the learned trial court in his conclusion that "the statute was obviously designed for the protection of persons while they are engaged in feeding power machines for the husking or shredding of cornstalks. . . . The old-fashioned corn shredder was a stationary machine. . . . The corn was then fed into the shredder by a person standing near it. . . . The words 'person feeding the machine' have no relevance to any operation which involves this machine, because there is no such person." The foregoing does not minimize the wisdom of the provisions of sec. 167.12 where they apply. But it must be concluded that that section is inapplicable here where a *driven* machine is involved which feeds itself by its own power as it cuts and proceeds against the stalks while the operator sits on the seat of the tractor and operates the machine by a system of levers.

The plaintiff is thirty-nine years old. He is the son of the defendant and for two years preceding the accident lived near his father. He had operated electric machines, had considerable mechanical experience, and was familiar with farm machinery, including the machine upon which he was hurt and which he had operated for two years and daily for about a week before the accident. His description of the occurrence of the injury is as follows:

"The picker had gotten some stalks into it, so I left the thing running while it cleaned out, climbed on the wagon and pushed the corn down, then when I got off the wagon and got back on the tractor, there was some corn laying in front

of the machine that had run down from cleaning out, and I stopped to pick it up before I got on the tractor. Then the chains up front flopped and caught my sleeve and pulled me into the rolls, and before I could get my bearings or some way to stop myself, it pulled me clear up to the top, and then I stood there and pulled until it ground off my fingers before I could get off. Then after the fingers were ground off, I got loose, shut the tractor off and started for the house."

From this testimony it is apparent that defendant knew the machine had been entirely cleared of cornstalks. There was no need for its running at the time he picked up the corn in front of the snout. Defendant had no reason for exposing himself to the danger of running machinery at the time his sleeve was caught in the chain, and it was his own act which resulted in the injury. As we have said, the plaintiff had operated the cornhusker and picker for about two years before he was injured and daily for about a week immediately preceding the accident. After the conversation with his father concerning the looseness of the chains, the machine worked without difficulty, without accident, and it is evident that the looseness of the chain created no new danger, and there was no such lack of diligent effort by the defendant to remedy the condition as would render defendant liable for the injury to appellant. *Yerkes v. Northern Pacific R. Co.* 112 Wis. 184, 189, 88 N. W. 33; *Nickas v. Hines,* 174 Wis. 387, 183 N. W. 151.

With respect to plaintiff's cause of action based upon common-law negligence, as distinguished from the cause of action based upon violation of sec. 167.12, Stats., the question arises as to whether plaintiff is barred from recovery by reason of his assumption of risk or his contributory negligence. It is sometimes difficult to distinguish between assumption of risk and contributory negligence. The reason and distinctions are pointed out in such cases as *Fandek v. Barnett & Record Co.* 161 Wis. 55, 150 N. W. 537; and

*Scory v. LaFave,* 215 Wis. 21, 254 N. W. 643. In the latter case, in a concurring opinion by Mr. Justice FOWLER, the following appears at page 33:

"Assumption of risk is considered to be a matter of contract, express or implied. Contributory negligence is a matter of conduct. In the ordinary case, the distinction between the two is plain. However, cases exist wherein assumption of risk shades into and even merges into negligence. Assumption of risk is not dependent on the probability or improbability, or the imminence or remoteness of danger. Where it exists it constitutes a defense whether in assuming the risk the servant exercised ordinary care or not. If the danger assumed was so imminent and apparent that a person of ordinary care and prudence would not assume it, the assumption of it amounts to and in fact is contributory negligence. The difference between the two is thus often a matter of degree rather than kind."

If plaintiff's situation was by reason of his protest one which relieved him of the assumption of risk in the general operation of the machine, still he knew the danger of the loose and flopping chains. He knew he was not required to go near them when in motion. He also knew there was a perfectly safe way of protecting himself by stopping the machine —and he knew that he was entitled to use this method. Knowing all these facts, he chose the dangerous way and was, under the circumstances, guilty of contributory negligence.

However, we find it unnecessary in the instant case to determine whether plaintiff's conduct in attempting to pick up the ears of corn lying beneath the snouts of the corn-picking machine, with the mechanism in motion, constituted assumption of risk or contributory negligence, because on either theory plaintiff would be barred from recovery. If such conduct constituted contributory negligence, it was the duty of the trial court to hold such negligence of the plaintiff,

as a matter of law, to have been at least as great, or greater, than defendant's negligence.

*By the Court.*—Judgment affirmed.